(155 App. Div. 565.)

### STEPHEN MERRITT BURIAL & CREMATION CO. v. STEPHEN MERRITT CO. et al.

(Supreme Court, Appellate Division, First Department.   March 20, 1913.)

1. TRADE-MARKS AND TRADE-NAMES (§ 73*)—UNFAIR COMPETITION—RIGHT TO USE OF NAME.

   S. M., an undertaker, formed a corporation called the S. M. Burial Company, which thereafter carried on his undertaking business and to which he transferred everything used by him in the business without in terms conveying the good will or the right to use his name as its trade-name. Thereafter he organized plaintiff, the S. M. Burial & Cremation Company, and by an instrument executed by him as president, assigned to it the good will, stock in trade, etc., and all assets and property of the old company. The new corporation under his direction proceeded to sell stock, advertising that its business was an enlargement and continuation of that formerly carried on by him and that he had conferred upon the company "his name, his life, his future, and his all." His grandson, having the same name, organized the S. M. Company, which carried on a small business until the grandfather, having failed of re-election as president of the plaintiff, was employed by it, whereupon it procured a place of business near that of plaintiff, and, by exploiting the grandfather's name and picture, diverted plaintiff's trade by leading the public to believe that it was the original S. M. undertaking business. *Held*, that the S. M. Company was guilty of unfair practices and was properly enjoined from transacting the undertaking, funeral, and embalming business under any name in which the name S. M. formed a part, or from displaying the grandfather's picture as an advertisement or advertising that he was employed by it.

   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. § 73.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 73*)—UNFAIR COMPETITION—RIGHT TO USE OF NAME.

   The grandson was properly enjoined from using his own name in the undertaking business without such explanatory suffixes as would show that it was he and not the grandfather who was so engaged.

   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. § 73.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 73*)—UNFAIR COMPETITION—RIGHT TO USE OF NAME.

   The grandfather, having conferred upon plaintiff the right to use his name as its trade-name, was properly enjoined from engaging in the undertaking business in competition with plaintiff in his own name or from granting to any other person the license or authority to use his name or portrait in a competing business.

   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. § 73.*]

   Ingraham, P. J., and Laughlin, J., dissenting in part.

Appeal from Special Term, New York County.

Action by the Stephen Merritt Burial & Cremation Company against the Stephen Merritt Company and others. From a final decree granting an injunction, defendants appeal. Affirmed.

See, also, 152 App. Div. 948, 137 N. Y. Supp. 1145.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Charles R. Carruth, of New York City, for appellants.
Richard Ely, of New York City, for respondent.

SCOTT, J. We are all agreed that the decree appealed from is right and should be affirmed in so far as it restrains the defendant corporation, and it is unnecessary to recount the reasons for so much of the decree further than to say that it clearly falls within the rule laid down in Chas. S. Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 39 N. E. 490, 27 L. R. A. 42, 43 Am. St. Rep. 769, and other similar cases. It remains only to consider those provisions of the decree which affect the two defendants, grandfather and grandson, who bear the name of Stephen Merritt. The whole controversy turns upon the right to the use of the name Stephen Merritt as a trade-name.

The elder Stephen Merritt, known as the Reverend Stephen Merritt, was an undertaker on Eighth avenue near Twenty-Third street in the city of New York as long back as 1875, having succeeded his father of the same name, and had acquired a large share of public reputation and notoriety, especially in that thickly populated part of the city in which his place of business was located. In 1897 he turned his business into a corporation, called the Stephen Merritt Burial Company, in which two of his employés were associated with him. He thereupon ceased to carry on his business individually, devoting all of his time and energies to the business of the corporation, of which he always owned a majority of the stock, and at all times controlled. To this corporation he transferred everything theretofore used by him in the conduct of his business. He did not in terms convey to the corporation the good will of his former business and the right to use his name as its trade-name, but we can entertain no doubt that it was his intention that the corporation should enjoy the use of his name as the distinctive trade-name of the business, and all of his acts were consistent only with that intention. In 1899 he organized the present plaintiff corporation of which he became president. To this corporation the Stephen Merritt Burial Company, by an instrument executed by Stephen Merritt himself, as president, assigned "the entire *good will,* stock in hand, fixtures, outstandings, merchandise and all manner and kind of assets and property of the party of the first part (the Burial Company) in any wise belonging or appertaining thereto," except the franchise, and treasury stock and a lease.

The case is replete with evidence that the Reverend Stephen Merritt intended that his own name should be the trade-name of the corporation first organized by him. No sooner had that corporation been organized than it began, under said Merritt's direction, a vigorous selling campaign, by the issue of circulars and other so-called literature, in which the public was invited to subscribe because the business was to be an enlargement and continuation of that formerly carried on by him, and because he was to be its president and director. It was expressly declared that Mr. Merritt had conferred upon the company *"his name,* his life, his future and his all." The very certificates of stock, which were sold as freely as possible, bore his name and likeness. A man may not incorporate his business under his own

name, invite the public to invest in it because it does bear his name and therefore is identified with him, and entitled to whatever benefit may accrue from the use of his name and reputation, and then, having obtained their money, sell the use of his name to another and competing concern.

"It is not right to profess and to purport to sell that which you do not mean the purchaser to have; it is not an honest thing to pocket the price and then recapture the subject of sale." Trego v. Hunt, L. R. App. Cas. 1896, 7.

The legal effect of Merritt's action, as no doubt was his intention, was to confer upon the first corporation, the Burial Company, the benefit of the use of his name as a trade-name, and it undoubtedly constituted an item, and a very important item, of the good will of that company which was expressly included in the sale to the plaintiff corporation.

The defendant corporation was organized in 1910 by the younger Stephen Merritt, a grandson of the Reverend Stephen Merritt, who associated himself with one Wynkoop, then an employé of plaintiff, and one Buckingham, who had been in the employ of another undertaker. The charter of this corporation was exceedingly broad and sufficient to cover the transaction of almost any business, but it carefully avoided any specific mention of the undertaking business, rather emphasizing the business of dealing in real estate. The younger Merritt had been in the employ of plaintiff for a short time in a clerical capacity, but seems to have had little experience on the practical side of the business. This corporation opened a small establishment in 126th street, about five miles from plaintiff's principal place of business, and so continued until August, 1911.

In that month the trustees of the plaintiff failed to re-elect the Reverend Stephen Merritt as president, but adopted a resolution granting him an honorarium of $50 per week, provided he would take steps to secure an indebtedness he owed to the company. The legality of this action is not called in question. Merritt declined to accept this provision for his benefit and at once allied himself with the defendant corporation, from whom he received a salary of $25 per week, for which he seems to have done little except sit around the office and give color to the impression that the business was identical with that with which his name had been so long associated. The defendant corporation at once took a place of business on Eighth avenue near the plaintiff's place of business and exploited in every possible way the name and picture of the elder Merritt with the evident and successful purpose of diverting plaintiff's trade by leading the public to believe that it, and not the plaintiff, was the original and well-known Stephen Merritt undertaking establishment.

[1] As I have said, we are all agreed that the defendant company was guilty of unfair practices and has been properly enjoined.

[2] As to the younger Merritt, the decree appealed from does not forbid him to use his own name even in the undertaking business, but only requires that if he desires to so use his name he shall do so in a manner and with such explanatory suffixes as will truthfully show

140 N.Y.S.—57

that he is not his grandfather, and will not unfairly, by a suggestio falsi, compete with the trade of plaintiff. There is ample authority for such a decree. The subject has but recently been carefully considered by the Court of Appeals. In World's D. M. Ass'n v. Pierce, 203 N. Y. 419, 425, 96 N. E. 738, 740, it is said:

"The defendant has a right to use his name. The plaintiff has the right to have the defendant use it in such a way as will not injure his business or mislead the public. When there is such a conflict of rights, it is the duty of the court so to regulate the use of his name by the defendant that, due protection to the plaintiff being afforded, there will be as little injury to him as possible. Defendant should so use his name in connection with his remedies that he will obviate deception, or with an explanation which will inform or be a notice to the public that those remedies are not those of the plaintiff"—citing Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U. S. 554, 28 Sup. Ct. 350, 52 L. Ed. 616; Devlin v. Devlin, 69 N. Y. 212, 25 Am. Rep. 173; Meneely v. Meneely, 62 N. Y. 427, 20 Am. Rep. 489.

[3] As to the elder Stephen Merritt, known as the Reverend, the decree enjoins him from embarking upon an undertaking business in competition with plaintiff in his own name, or from granting to any other person license or authority to use his name or portrait for carrying on such a competing business. As has already been pointed out, the elder Merritt conferred upon the plaintiff corporation the right to use his name as its trade-name and it constitutes a valuable item of its assets. Having done this, we take it to be well settled that he has, so far as he and his privies are concerned, conferred upon the plaintiff an exclusive right to the use of his name as a trade-name, in analogy to the rules respecting trade-marks, and may not use it again in competition with plaintiff, or confer upon another the right so to use it. The authorities to support this proposition are numerous, and have been so lately collated and reviewed by this court that it is unnecessary to cite them again. Ludwig & Co. v. Claviola Co., 144 App. Div. 388, 129 N. Y. Supp. 310.

We are therefore of the opinion that the judgment appealed from is right and should be affirmed, with costs.

CLARKE and DOWLING, JJ., concur.

INGRAHAM, P. J. (dissenting). Final judgment in this case restrained the defendant corporation the Stephen Merritt Company from transacting or seeking to transact any undertaking, funeral, or embalming business, within the city of New York, under the name or style of "The Stephen Merritt Company," or under the name, style, title, or designation of which the word or name Stephen Merritt forms a part; or from displaying at any such place or places of business within the city of New York any portrait, bust, or likeness of the defendant Reverend Stephen Merritt, or from advertising to the public that said defendant, Reverend Stephen Merritt is employed by said corporation. The individual defendants are enjoined from transacting or seeking to transact, within the city of New York, any undertaking, funeral, or embalming business, under the name or title Stephen Merritt Company, or under any name, style, title, or device of which the name Stephen Merritt forms a part, and the defendant Reverend

Stephen Merritt is enjoined from transacting or seeking to transact within the city of New York any undertaking, funeral, or embalming business under his own name or any name, style, title, or device of which the name Stephen Merritt forms a part; or granting any license to any individual, partnership, or corporation transacting or seeking to transact any such undertaking, funeral, or embalming business within the city of New York, to use the picture, portrait, name, fame, or reputation of the said defendant, Reverend Stephen Merritt, directly or indirectly, for the purpose of soliciting trade, custom, or patronage. He is also enjoined from soliciting business, either for himself or for any individual, partnership, or corporation engaged in carrying on any undertaking, funeral, or embalming business within the city of New York.

The defendant Stephen Merritt, Jr., is enjoined from transacting or seeking to transact within the city of New York any undertaking, funeral, or embalming business under the name or title, "Stephen Merritt Company," or any name, style, title, or device of which the name "Stephen Merritt" forms a part, or from acting as officer or incorporator of any corporation bearing such name, style, or title, engaged in carrying on either of the aforesaid business or businesses, except that he may carry on the said business or businesses under the title "Stephen Merritt, Jr.," or "Stephen Merritt The Younger." He is also enjoined from using or displaying in connection with any such business or businesses the name, picture, or portrait of the defendant Reverend Stephen Merritt, or from seeking or soliciting trade, custom, or patronage, directly or indirectly, for any such business or businesses by any use of the picture, portrait, name, fame, or reputation of the defendant Reverend Stephen Merritt, and is enjoined from inserting the name Stephen Merritt in the Telphone Directory of the City of New York in connection with such business. Thus the defendants Reverend Stephen Merritt and Stephen Merritt, Jr., are enjoined from conducting any undertaking or funeral business in the city of New York under their own name or being engaged in or promoting such a business. Naturally one would expect that such a sweeping injunction would be based upon some agreement or covenant or obligation on the part of these defendants, either to give the plaintiff the exclusive right to the use of that name or of a business theretofore conducted under that name, or some affirmative covenant by which these defendants agreed not to conduct such a business or use their own names in connection therewith. But I can find in this record no evidence of such an agreement, or of any agreement by which the individual defendants had agreed either that the plaintiff should have the right to transact business under that name, or which, either expressly or by implication, prevented either of these defendants from transacting this or any other business.

The Reverend Stephen Merritt seems to have been a Methodist preacher, who went into the undertaking business and conducted it for years in the city of New York. He assisted in the formation of a corporation, which was known as "The Stephen Merritt Burial Company," and to that corporation, in consideration of the issue of stock,

he granted "  *   *   * all the stock on hand .belonging to me and used in my undertaking business; all hearses, carriages, horses and harness belonging to me and used in the said business and all other personal property belonging to me and appertaining to said business, *   *   *" subject to the payment of certain liabilities. That corporation did business for some time, the Reverend Stephen Merritt being its president, and subsequently the plaintiff corporation was formed, to which the former corporation transferred its business and property, of which the Reverend Stephen Merritt was also an officer. Subsequently the plaintiff discharged the Reverend Stephen Merritt from its service, which continued to transact its business using his name. The person designated as Stephen Merritt, Jr., was a grandson of the Reverend Stephen Merritt and was engaged in business in the city of New York. He organized the defendant Stephen Merritt Company, and, after the Reverend Stephen Merritt was discharged from the employment of plaintiff, this defendant corporation employed the Reverend Stephen Merritt, and they entered into business, competing with the plaintiff. There followed this action, which has resulted in the judgment to which attention has been called.

The defendant called Stephen Merritt, Jr., who was never designated in that manner, had always called himself Stephen Merritt, which is his proper name and the name by which he has become known. He has never had any relations, directly or indirectly, with the plaintiff or its predecessor corporation and sustains no such relations to the plaintiff as would prevent him from conducting any business in his own name. It has always been the settled law of this state that, in the absence of some express agreement or covenant, a person has the right to conduct any business in his own name without restraint from a court of equity. In Meneely v. Meneely, 62 N. Y. 427, 20 Am. Rep. 489, the defendant had been enjoined from the use of his own name in the bell foundry business; the referee found that the use of the name "Meneely" was calculated to, and did, mislead persons who were not personally acquainted with the plaintiffs and defendants, and that the use of the name Meneely was injurious to the plaintiff's business. In sustaining a reversal of that judgment, Rapallo, J., said:

"The manner of using the name is all that would be enjoined, not the simple use of it; for every man has the absolute right to use his own name in his own business, even though he may thereby interfere with or injure the business of another person bearing the same name, providing he does not resort to any artifice or contrivance for the purpose of producing the impression that the establishments are identical, or do anything calculated to mislead. Where the only confusion created is that which results from the similarity of the names, the court will not interfere. A person cannot make a trade-mark of his own name, and thus obtain a monopoly of it which will debar all other persons of the same name from using their own names in their own business."

Since the decision of that case, this question has been settled in this state. See, also, World's Dispensary Medical Association v. Pierce, 203 N. Y. 419, 96 N. E. 738, where the court said:

"It is a general principle of law that one's name is his property, and he has the same right to its use and enjoyment as he has to any other species of property. *  *  * The defendant has the right to use his name. The plain-

tiff has the right to have the defendant use it in such a way as will not injure his business or mislead the public."

In Donnell v. Herring-Hall-Marvin Safe Co., 208 U. S. 267, 28 Sup. Ct. 288, 52 L. Ed. 481, the contention of the defendant was that, as against the Hall family and any one selling their safes or standing in their shoes, the defendant had the sole right to the very valuable name Hall upon or for the sale of safes. In speaking of that contention, the court said:

"The good will sold was that of Hall's Safe & Lock Company. There is nothing to show that while that company was going the sons of Joseph L. Hall could not have set up in business as safe makers under their own name and could not have called their safes by their own name, subject only to the duty not to mislead the public into supposing when it bought from them that it was buying their father's safes. Therefore it could not be contended that merely by a sale the father's company could confer greater rights than it had. But it was said that, if a partnership had sold out by a conveyance in like terms, the members would have given up the right to use their own names if they appeared in the firm name, that in this case the Halls received the consideration for the good will they had attached to their name, that they ratified the sale and necessarily assented to it, since otherwise the corporation could not have sold its property or have carried out its agreement to dissolve, and that under such circumstances a court ought to look through the corporation to the men behind it."

The court further said:

"However it might be with a partnership, when this corporation sold its rights everybody had notice and knew in fact that it was not selling the rights personal to its members, even if, as always, they really received the consideration, or, as usual, they all assented to its act."

A further argument was based on the confusion produced by the petitioner through his use of signs and advertisements calculated to make the public think that his concern was the successor of the first corporation and otherwise to mislead, and the court said:

"This confusion must be stopped, so far as it has not been by the decree in force, and it will be. But it is no sufficient reason for taking from the Halls the right to continue the business to which they were bred and to use their own name in doing so."

I think the defendant the Reverend Stephen Merritt has the right to engage in business in his own name, using his own picture in connection therewith in advertising the business and soliciting patronage from others, and that the defendant Stephen Merritt, Jr., or Stephen Merritt The Younger, is also entitled to do business in his own name, to employ his grandfather as his assistant, in that business, and to advertise and solicit business based upon the fact that the grandfather is connected with him in business. I think there is evidence to justify the court in enjoining the defendant corporation from using its name in the undertaking business, as showing that it was used with the intention of unfairly competing with the plaintiff's business, and an injunction to that extent was justified by the evidence. But, after the Reverend Stephen Merritt had been discharged by the plaintiff from its employment, there was nothing to prevent him from engaging in the business, in which he had been engaged, both as an individual and as an officer of plaintiff and its predecessor, and the judgment, so far

as it enjoins the said defendants from transacting business and using the name of either the Reverend Stephen Merritt·or his grandson, Stephen·Merritt, was entirely unjustified by the evidence.

Therefore I think the judgment appealed from should be modified by striking out all the provisions therein, excepting the single provision enjoining the defendant corporation from using the name Stephen Merritt Burial Company in the undertaking business.

LAUGHLIN, J., concurs.