P. J. TIERNEY SONS, INC., Plaintiff, *v.* TIERNEY BROS., INC., Defendant.

Supreme Court, New York County, September 13, 1927.

**Trade-marks and trade names — unfair competition — injunction pendente lite granted restraining defendant absolutely from using family name in connection with manufacture of lunch wagons.**

Two members of the defendant corporation were originally members of the plaintiff corporation. The plaintiff corporation is the successor of a partnership which was engaged in the construction of lunch wagons and which sold its entire business including its good will to the plaintiff corporation. The plaintiff corporation and its predecessor, the partnership, had acquired a valuable trade name in the manufacturing of lunch wagons. The members of the defendant corporation who originally owned the plaintiff corporation sold their interest therein and formed the defendant corporation for the purpose of manufacturing lunch wagons. Before the defendant had manufactured any lunch wagons it circularized the trade with a letter in which it was stated that the defendant announced " our resumption of the manufacture of dining cars. * * * We hope for a continuance of your past patronage " and closed as follows: " Trusting we may have the pleasure of again serving you." This letter was sent to customers of the plaintiff and to others.

The plaintiff is entitled to an injunction *pendente lite* restraining the defendant from using any name of which " Tierney " is a part in connection with the business of manufacturing, selling and advertising dining cars, in view of the fact that the defendant and the members thereof have already used that name fraudulently and dishonestly to take customers from the plaintiff.

MOTION by plaintiff, P. J. Tierney Sons, Inc., for an injunction *pendente lite* restraining the defendant, Tierney Bros., Inc., from using any name of which " Tierney " is a part in connection with

the business of manufacturing, selling and advertising lunch wagons and their equipment.

*Guggenheimer, Untermyer & Marshall* [*Irwin Untermyer* and *Robert Diamond* of counsel], for the plaintiff, for the motion.

*Frank V. Farrell*, for the defendant, opposed.

FRANKENTHALER, J.   In 1898 Patrick J. Tierney commenced to manufacture lunch wagons on a large scale.   Each of the products was known as a " Tierney lunch wagon," and, to quote from the answering affidavit of defendant's president, Edward J. Tierney, it was not long before " the name of Tierney became a synonym for the better class of lunch cars."   Patrick J. Tierney died in 1917.   His sons Edward J. and Edgar T. Tierney formed the partnership of " P. J. Tierney Sons " which took over and carried on their father's business.   Every wagon made by the firm bore the name of " P. J. Tierney Sons " as manufacturers and much money was spent by the partnership — as it had been previously by Patrick J. Tierney — in advertising the name of Tierney in the dining car field.   In 1922 plaintiff, P. J. Tierney Sons, Inc., was incorporated to take over the assets and affairs of the partnership.   According to defendant's memorandum of law the copartners " also assigned " to the corporation " the good will of the business."   At the outset all the stock was owned by Edward and Edgar Tierney and their uncle, Daniel Tierney.   The three Tierneys were also the directors and officers of what was a " family corporation."

The business prospered and plaintiff in due time became the largest manufacturer of dining cars and equipment.   As a result of extensive advertising, fair dealing and the quality of its product it acquired a national reputation of great value.   The wagons which it produced were variously known as the " Tierney Dining Cars," the " Tierney Diner," etc., and plaintiff itself has come to be known in the trade as " Tierney " and has advertised as such.   The name Tierney when used in connection with lunch and dining cars brought to the mind of the interested public the products of the plaintiff and it came to identify them as such.

In February, 1926, Edgar T. Tierney sold all his stock to his brother Edward and severed all connection with the company.   In September of the same year, according to the answering affidavit of defendant's president, plaintiff encountered serious financial difficulties which culminated in the sale by Edward and Daniel Tierney to outside interests of all the preferred and fifty-one per cent of the common stock.   Subsequently, in July, 1927, they transferred the rest of their holdings to the same interests.   From

that time on no member of the Tierney family has been an officer, employee, director or stockholder of the plaintiff corporation. In February, 1927, *although he was still at the time a director of plaintiff*, Edward J. Tierney together with Edgar and one Fanelli, who, it is undenied, was merely the nominee of Daniel Tierney, formed the defendant corporation. The certificate of incorporation filed in Westchester county stated that the principal office was to be at New Rochelle where the *plaintiff's* business has been located ever since it was originally founded by P. J. Tierney. It names as directors for the first year Edward J. Tierney, Edgar T. Tierney and Fanelli. Defendant does not dispute the charge that the present directors are Edward, Edgar and Daniel Tierney. The certificate of incorporation specifically mentions, as one of the purposes of the business, the manufacture, sale, etc., of lunch cars, dining cars and other incidental equipment. Indeed defendant openly states that it was and is its intention to compete with plaintiff in the manufacture of these products. From February to June Edward J. Tierney and his brother Edgar, to quote the former, " were actively engaged in seeking a suitable factory for the manufacture of dining cars, and completing the many details attendant upon the start of a new business." Such a place was finally obtained and the production of dining cars commenced. It is important, however, to note that not a single car has yet been completed, delivery of the first being promised for about September 15, 1927. Nevertheless, on or about June 23, 1927, defendant, it is conceded, circularized *among customers of plaintiff* as well as others a letter reading as follows:

" TIERNEY BROS., INC.
" Originators and Developers of the Famous
" Tierney Dining Car
" So. Fulton & So. Columbus Aves.,
" Telephone            Mt. Vernon, N. Y.
" Oakwood 6400        June 23, 1927.
" AMERICAN DINERS, INC.,
" 42 Broadway,
" New York City:    Attention: Mr. Cowan

" GENTLEMEN.— We take pleasure in announcing our resumption of the manufacture of dining cars, with factory and offices located at South Columbus and South Fulton Avenues, Mount Vernon, N. Y.

" We hope for a continuance of your past patronage, which has contributed so greatly to make the Tierney dining car what it is today, and you may be assured of the same cooperation and fair dealing which has always characterized our name in the industry.

Misc. 428]             Supreme Court, September, 1927.

" Situated as we are in the largest factory of its kind in the country, we are enabled to maintain the same high standards of construction and service as in the past, and at a material saving to you.

" You are cordially invited to inspect our new quarters, or write us if you desire information regarding our improved lunch cars, addressing your inquiry to the factory at Mount Vernon.

" Trusting we may have the pleasure of again serving you, we are                    Sincerely yours,

                         " TIERNEY BROS., INC.,

                              " By: EDWARD J. TIERNEY

" EJT:SF                              *President.*

        " THE DINING CAR AS IT SHOULD BE."

The publication of this letter was an attempt on the part of the defendant to deceive the public into the belief that the defendant was the manufacturer of the Tierney Diners produced by plaintiff. The reference at the top of the letterhead to " Tierney Bros., Inc.," as " Originators and developers of the famous Tierney dining car " was false. It is admitted that " Tierney Bros., Inc.," has not yet produced a single car. The only manufacturer of Tierney dining cars to date is the plaintiff and the latter has often advertised its product as " the famous Tierney dining cars." The address of the defendant near the top of the letterhead is given as Mt. Vernon, N. Y., but this address is written above a previous address which has been marked out on the typewriter. Examination reveals that the former address was New Rochelle which has been the home of the plaintiff since Patrick J. Tierney founded the business in 1898. It seems quite evident, especially in view of the circumstances hereinafter set forth, that defendant's object was to lead the trade to believe that *it* was no other than the plaintiff and that the occasion for the letter was the fact that it had moved its plant and changed its address.

The body of the letter renders this even more apparent. The statement in the first sentence that defendant was *resuming* the manufacture of dining cars is totally false for it had only been organized in February, 1927, and had never manufactured a single car. The reference in the 2d paragraph to defendant's hope " for a continuance " of the addressee's " past patronage, which has contributed so greatly to make the Tierney dining car what it is today " obviously represents a fraudulent attempt on the part of the defendant to identify itself as the plaintiff in the eyes of the public. Moreover, it confirms the truth of plaintiff's charge that the defendant circularized not only the trade in general but even

Supreme Court, September, 1927.      [Vol. 130

customers of the plaintiff. The 3d paragraph of the letter is equally untrue in stating that the defendant is " enabled to maintain the same high standards of construction and service as in the past." The 4th paragraph refers to the defendant's " new quarters," a reference which is well calculated, when read in connection with the change of address at the top of the letter and the other statements therein, to instill the belief that the defendant is none other than the plaintiff, located in a new factory. In the last paragraph the defendant hopes for the pleasure " of *again* serving you," a statement which is likewise misleading. The fact that the signature is by the defendant corporation and not by any of the Tierneys individually removes the possibility of a claim that the statements about previous manufacture of dining cars referred to the Tierney *family.* The letterhead and the signature are of the defendant corporation and not of any of the Tierneys as individuals.

Defendant has distributed other circulars and advertising matter in which it has spoken of itself as the originator and developer of " the famous Tierney Dining Car " and used other expressions clearly intended to enable it to obtain the benefit of plaintiff's reputation.

The situation is similar to the one before the court in the recent case of *Westphal* v. *Westphal's World's Best Corporation* (216 App. Div. 53; affd., without opinion, 243 N. Y. 639). There the defendant Paul Westphal, a grandson of the founder of plaintiff's business, formed a corporation, in conjunction with another, under the name of " Westphal's World's Best Corporation." This company commenced to manufacture and distribute products similar to those produced by the plaintiff, with statements on the containers that they were " manufactured by Westphal's World's Best Corp., Paul Westphal, Pres., New York." The defendants advertised in trade journals that the hair tonic put out by them was " now sold in bulk." The Appellate Division said (at p. 59), MERRELL, J., writing for the court: " The evident purpose of such advertising and the use of the words ' now sold in bulk ' was to give the trade the impression that the defendant company was dealing in the original Westphal's tonic, and that a new policy had been adopted by the old original company of selling its commodity in bulk at a comparatively low price." The court concluded from this and similar letters " that the defendants have been most unfair in their practices, and that if possible the plaintiff should receive injunctive relief against a continuance of defendants' practices." (P. 59.) It said (at p. 71): " It clearly appears that defendants' use of that name [Westphal] was for the dishonest purpose of obtaining from the plaintiff that for which it had labored for long years and for

which it had spent a large amount of money in advertising, and for the purpose of deceiving the public into the belief that the defendants were engaged in the manufacture and sale of plaintiff's well-known preparation."

Other instances of unfair and improper competition on the part of this defendant are also disclosed.

The plaintiff acquired from the partnership of P. J. Tierney Sons the good will of the business theretofore conducted by the latter. It is true that neither Edward J. Tierney nor Edgar T. Tierney entered into a covenant to refrain from competing with the plaintiff in the manufacture of lunch and dining cars. This circumstance, however, did not give them or either of them the right to actively solicit patronage from customers of the plaintiff. It is well settled in this State that one who has sold the good will of a business has no right to solicit trade from old customers even though the absence of a covenant to refrain from competition may permit him to carry on a competing business. (*Von Bremen* v. *MacMonnies*, 200 N. Y. 41; *Matter of Brown*, 242 id. 1, 10.) Whether the obligation on the part of a vendor to refrain from canvassing former customers is to be regarded as based upon the principle that a man may not derogate from his own grant, or whether it is to be deemed the result of an implied contract to abstain, the fact is that the obligation is held to exist and to be enforcible. As Lord HERSCHELL well said in the case of *Trego* v. *Hunt* (L. R. [1896] App. Cas. 7) in language quoted and approved by our Court of Appeals in *Von Bremen* v. *MacMonnies* (*supra*): " It is true that those who were former customers of the firm to which he belonged may of their own accord transfer their custom to him; but this incidental advantage is unavoidable, and does not result from any act of his. * * * But when he specifically and directly appeals to those who were customers of the previous firm he seeks to take advantage of the connection previously formed by his old firm, and of the knowledge of that connection which he has previously acquired, to take that which constitutes the good will away from the persons to whom it has been sold and to restore it to himself." In the language of Judge CARDOZO in *Matter of Brown* (*supra*, 10): " After a voluntary sale, the seller, though he may compete, may not drum up or circularize the customers of the business."

The defendant admits that it has solicited patronage from former customers of the plaintiff. It attempts, however, to justify this by stating that it did not " particularly " circularize plaintiff's customers but attempted to " circularize the entire dining car

28

industry, of which plaintiff's customers are but a small part, and almost all of whom are personally known to deponent (Edward J. Tierney) by reason of his long connection with the dining car business, and many of whom deponent personally helped to enter the business for themselves without capital." It will be remembered that the letter of June twenty-third, previously quoted in full, referred to the addressees' "past patronage." It is clear, therefore, that the Tierneys, through the defendant corporation which they formed, are violating the obligation imposed upon them by the sale of the good will of their business to the plaintiff, and that the authorities regard this as unfair competition which may be restrained. It is obviously no excuse that the active solicitation of customers has not been confined to those of the plaintiff. The Tierneys are making use of information derived by them while they occupied a fiduciary relationship to the plaintiff, as directors thereof, not to mention the fact that Edward J. Tierney, while still a director of the plaintiff, combined with his brother and his uncle to establish a competing business.

There is, then, abundant evidence that the Tierneys and the defendant are not using the name "Tierney" in honest and fair competition with the plaintiff, but that on the contrary are endeavoring by improper, unfair and fraudulent means to take advantage of that name for the purpose of profiting from the plaintiff's reputation and misleading the public into the belief that their products are those of the plaintiff. As Swan, J., pointed out in *Jergens Company* v. *Bonded Products Corporation* (U. S. Circuit Court of Appeals, 2d Circuit, 21 F. [2d] 419; N. Y. L. J., September 1, 1927): "The principle that 'no man has a right to represent his goods as the goods of another' is applicable to misrepresentations by the use of a proper name, as well as by other means, even though the name be one which the defendant would ordinarily be privileged to use. [*Rogers Co.* v. *Rogers Mfg. Co.* (C. C. A., 2d Cir.), 70 Fed. 1017; *Clark Thread Co.* v. *Armitage* (C. C. A., 2d Cir.), 74 id. 936, 943; *Baker & Co.* v. *Sanders* (C. C. A., 2d Cir.), 80 id. 889; *Vick Medicine Co.* v. *Vick Chemical Co.* (C. C. A., 5th Cir.), 11 F. (2d) 33; *Garrett* v. *Garrett & Co.* (C. C. A., 6th Cir.), 78 Fed. 472; *Royal Baking Powder Co.* v. *Royal* (C. C. A., 6th Cir.), 122 id. 337; *Chickering* v. *Chickering & Sons* (C. C. A., 7th Cir.), 215 id. 490; *Jergens Co.* v. *Woodbury*, 197 N. Y. 66.]"

The leading case in this State is that of *Higgins Co.* v. *Higgins Soap Co.* (144 N. Y. 462) where the court said (at p. 468): "The right of a man to use his own name in his own business the law protects, even when such use is injurious to another who has established a prior business of the same kind and gained a reputation which goes

with the name. But in such cases the courts require that the name shall be honestly used, and they permit no artifice or deceit, designed or calculated to mislead the public and palm off the business as that of the person who first established it and gave it its reputation."

Mr. Justice HOLMES stated in *Waterman Co.* v. *Modern Pen Co.* (235 U. S. 88, 94) that " There is no distinction between corporations and natural persons in the principle, which is to prevent a fraud." Similarly in the *Higgins Case* (*supra*) our Court of Appeals held that " In respect to corporate names the same rule applies as to the names of firms or individuals." (P. 468.) Moreover, as the court pointed out in that case, no additional immunity is derived from the fact that the corporate name is that of one or more of the incorporators. The name must nevertheless be honestly and fairly used. (*Westphal* v. *Westphal's World's Best Corporation, supra; Merritt Burial & Cremation Co.* v. *Merritt Co.*, 155 App. Div. 565; mod., 214 N. Y. 676.)

Plaintiff is clearly entitled to injunctive relief. It remains only to consider its extent. The relief sought is that defendant be restrained until the trial of the action from using any name of which " Tierney " is a part in connection with the business of manufacturing, selling and advertising dining cars and other equipment. In the *Westphal Case* (*supra*) the only real question before the court was the extent of the injunction order and it was there held, in an exhaustive opinion, that where the evidence indicated that the name had previously been used fraudulently and dishonestly, adequate and effective relief could only be obtained if the defendants were entirely forbidden to use the name which they had sought to capitalize. Accordingly it was held that the injunction was not too broad in restraining the defendants from using the name of Westphal either alone or in conjunction with other words or symbols in connection with the hair tonic or barbers' supply business. CLARKE, P. J., and FINCH, J., dissented on the ground that the injunction was improper in absolutely restraining the use by Westphal of his own name. The Court of Appeals, however, affirmed the decision of the majority of the court. (243 N. Y. 639.) Under the circumstances here disclosed plaintiff is entitled to the relief prayed for in its entirety and the motion is, therefore, granted. Settle order on notice.