WILLIAM S. COFFEY, as Administrator c. t. a., d. b. n., etc., of FLORENZ ZIEGFELD, Deceased, Plaintiff, *v.* METRO-GOLDWYN-MAYER CORPORATION and ROSTA THEATRES CORPORATION, Defendants.

Supreme Court, Special Term, Westchester County, July 6, 1936.

*Budd & Coffey* [*Bern Budd* of counsel], for the plaintiff.

*J. Robert Rubin* [*Samuel D. Cohen* of counsel], for the defendant Metro-Goldwyn-Mayer Corporation.

PATTERSON, J. The plaintiff seeks an injunction *pendente lite* restraining the defendants, their agents and employees, from using the name " Ziegfeld " in connection with a certain theatrical production now being exhibited in New York city under the title " The Great Ziegfeld," and from further using the name " Zieg-

feld " in connection with any advertising or publicity relative thereto, and from using said name in any theatrical venture or business.

The plaintiff proceeds on the theory that the name " Ziegfeld " is an asset and property of the estate of Florenz Ziegfeld, deceased. The production in question is a moving picture. It purports to depict the life of Ziegfeld through the medium of the screen rather than by a book. It is referred to by the parties as a fictionalized biography.

The decedent was the producer, for many years, of a certain form of entertainment known as musical revues or musical comedies, which had obtained a great vogue, the most popular of which was a succession of productions known as the " Ziegfeld Follies." These plays or exhibitions were produced by a corporation or corporations, the control of which were probably in the producer, Ziegfeld, but the productions were wholly the result of Florenz Ziegfeld's creative ability and artistic sense. His was the genius that gave the productions the nationwide publicity which they enjoyed.

It appears that decedent never produced a moving picture bearing the name of " Ziegfeld," or, for that matter, any picture. His productions were all through the medium of the speaking stage.

Plaintiff contends that he owns the name " Ziegfeld," and that the defendants' use of the name is in violation of his rights and is within the prohibitive practices called generally " unfair competition," and that " The Great Ziegfeld " is not a biography, but a musical revue. The last of these contentions is probably correct.

The defendants contend, *inter alia*, that the plaintiff is not the administrator of Ziegfeld's estate, and hence cannot maintain this action; that the late Florenz Ziegfeld did not do business under his own name, and he was known principally for the " Ziegfeld Follies;" that he was engaged in an occupation requiring personal skill, and, therefore, there was no good will which attached to his name; that he died without leaving a business to which good will could attach, and the law does not permit the sale of good will separate and apart from the business with which it was connected; that the plaintiff, having sold to Ziegfeld's widow all of his right, title and interest in the name " Ziegfeld Follies," and since his name was not connected with any other production, plaintiff is estopped from maintaining this action.

As to the first contention of the defendants, I do not think it can be disposed of as lightly as the plaintiff treats it in his brief.

It appears that by a proceeding in the Surrogate's Court of Westchester county a decree was made in May, 1935, judicially

settling the accounts of the administrator, discharging him as such administrator, and canceling his bond. In his accounts nothing is said of the name " Ziegfeld " as being an asset of the estate. Thereafter, in April, 1936, obviously for the purpose of bringing this action, the administrator moved to amend the decree settling his accounts and discharging him by providing that it apply only to such matters and things embraced in the accounting.

The plaintiff's papers in this action were sworn to on April 28, 1936, but the order amending the decree of May 3, 1935, was not signed until May 8, 1936, so that at the time of instituting this action the plaintiff was not the administrator of the estate of Florenz Ziegfeld, he having been discharged and his bond canceled on May 3, 1935.

Unquestionably the surrogate may open, vacate, modify or set aside a decree of the court, but only if there appears fraud, newly-discovered evidence, clerical error or sufficient cause. Plaintiff did not allege any of the four, but in his original accounting proceedings he did allege that he had accounted for all properties received by him and disbursements made by him and that nothing was omitted from the accounting.

It is a serious question whether the surrogate has power to open a decree settling the accounts of an administrator, when by such decree he was discharged and his bond canceled.

It is a serious question whether the decree settling his accounts and discharging him did not leave him *functus officio.*

None of the decisions cited by plaintiff deals with cases where the decree provided for the final discharge of the representative.

*Matter of Seitz* (149 Misc. 526) appears to be authority for the contention of the defendants.

As bearing upon the value of the name " Ziegfeld " to his estate, it is pertinent to note that the plaintiff, prior to the commencement of this action, sold the name " Ziegfeld Follies " to his widow for the sum of $5,000. In other words, he divested himself entirely of the name " Ziegfeld Follies " for all purposes for that sum. That was after a reference to determine the value of the name " Ziegfeld Follies." The referee found that the monetary value of the name was questionable and the estate's rights to the name could be determined only by litigation, which would be protracted and expensive. He joined in the recommendation of the plaintiff that Mrs. Ziegfeld's offer of $5,000 in full settlement of the claim to the name " Ziegfeld Follies " be accepted and the surrogate approved the report.

If there was any good will in the name " Ziegfeld " it was disposed of by the sale of the name " Ziegfeld Follies."

If the question of competition is involved at all it was in the case of the " Ziegfeld Follies." As said above, Ziegfeld never produced a motion picture. He confined his activities to stage productions. The only part of the name that had any value whatever or uniqueness or distinction was the word " Ziegfeld." The word " Follies " alone meant nothing. That is self-evident.

While the administrator sold only the use of the name " Ziegfeld Follies," specifically retaining the name " Ziegfeld " in all other connections, still it is not apparent what good will or value the word " Ziegfeld " had to any one after the estate had sold the use of the name " Ziegfeld Follies."

Before there can be an injury to good will it must be shown that there is good will. This, I think, the plaintiff will be unable to prove, either from a legal standpoint or from a practical business point. Ziegfeld in his lifetime was engaged in a profession involving personal skill and qualifications which was highly specialized, and as a general proposition good will will not attach in such an instance. Ziegfeld had no merchandise. He had no stock. It is true that he did have a following in the theatrical world.

The situation would be different were Ziegfeld engaged in merchandising when his name could be sold in connection with the business which he conducted during his lifetime.

In the case of a commercial trade or business the element of good will has its place. There the business is more or less impersonal, but not here, where the business was solely dependent upon the personal qualifications and characteristics and peculiar ability of Ziegfeld. (See *Matter of Case*, 122 App. Div. 343; *Read* v. *Mackay*, 47 Misc. 435; *Matter of Caldwell*, 107 id. 316; affd., 195 App. Div. 890. See, also, *Matter of Leserman*, 145 Misc. 387.)

We believe it well settled that the good will or the name of a business that is strictly personal in its nature and one which requires personal skill, such as the business of a doctor, dentist, attorney or playwright, cannot be conveyed after one's death by his representative.

As plaintiff points out in his brief, the name " Ziegfeld " stood for something unique. It stood for a type of entertainment entirely personal. (See *Messer* v. *The Fadettes*, 168 Mass. 140; 46 N. E. 407. See, also, *Bailley* v. *Betti*, 241 N. Y. 22; *Blakely* v. *Sousa*, 197 Penn. St. 305; 47 A. 286.)

It is undisputed that Ziegfeld left no business. He died in 1932, and the last production of Ziegfeld was in 1931. It is now four years since he died, and no sale of any business has taken place. Not having left a business, it would seem that the name " Ziegfeld " could not be sold, and the law does not recognize the sale of a name or good will separate and apart from a business.

As Judge LACOMBE said in *Washburn* v. *National Wall-Paper Co.* (81 Fed. 17): " It is contended that, although ' good will ' is property in the sense that it is a subject of bargain and sale, it is nevertheless but a so-called ' parasitical species of property, which cannot exist apart from the substantial property of which it is an attribute;' that it is not a thing of value by itself."

The defendants contend that they spent in excess of $2,000,000 in producing " The Great Ziegfeld," and have, in addition, expended or incurred for advertising upwards of $600,000. To grant the injunctive relief now sought by the plaintiff would probably be the loss of most of this investment. The plaintiff's answer to this is that if an injunction is granted the defendants will immediately come to terms. In other words, they will buy their release from the burden of the injunction. I cannot give ear to any such reason as this for issuing the injunction.

In an application for injunctive relief the court must first be satisfied that a good cause of action is made out, failing in which, the court need go no further, and the plaintiff's motion must be denied.

The purpose of a preliminary injunction is only to preserve the *status quo*. It is a drastic relief, and the granting or withholding thereof is a matter of discretion.

To grant the injunction here would bear heavily upon the defendants, and I cannot see any corresponding benefit to the plaintiff, unless, as he says, he will thereby force a settlement.

The cause of action here is tenuous to say the least. The plaintiff seeks to protect a merely technical and very unsubstantial right.

For the reason that no good will attaches to the name " Ziegfeld," if for no other, the motion for the temporary injunction must be denied.