Harry G. Herman, S.
This is an appeal (Tax Law, § 249-x) by the executrix from the pro forma order of this court, dated February 28, 1963, assessing the estate tax in this estate, which included as an unreported asset of the estate $61,495 as the value of the good will of the decedent’s business.
The decedent was the sole proprietor of a funeral home on premises owned by him, in which he also resided, situated in a residential district in the City of Yonkers, located between two churches and which, because of zoning restrictions, had only one competitor, three blocks away. The decedent had been engaged in this business in Yonkers for more than 30 years and at its present location for approximately 13 years prior to the decedent’s death on November 22, 1958. Under his last will and testament, dated February 2, 1956, and admitted to probate on January 12, 1959, the decedent bequeathed his entire estate to his wife, the appellant herein, who before his death worked with him in the business, serving her apprenticeship.
*827 The decedent during his lifetime actively engaged in community affairs. He had been elected and served as an Alderman, Councilman, Supervisor and Vice-Mayor of Yonkers, and had actively participated in the affairs of both churches and in many fraternal organizations.
His business as a mortician not only benefited from these personal contacts, but also from its strategic location close to the two churches. The restrictive zoning virtually precluded any other funeral directors locating in the area.
Section 3420 of the Public Health Law provides: “1. No person shall engage in the business or practice of funeral directing, undertaking, or embalming or transact or hold himself out as transacting or practicing or as being entitled to transact or practice funeral directing, undertaking or embalming in this state unless duly licensed according to law, and registered under the provisions of this article ”.
Section 3441 of the Public Health Law provides:
“ 1. No funeral establishment shall be operated within the state unless:
“ (a) if the owner is an individual, he shall be a duly licensed funeral director or undertaker
• # #
“ 2. A license granted or issued by the department shall not be assignable or transferable.”
The decedent’s license having expired with his death, upon his death, his wife, who had been associated with him in this business, took the necessary courses of instruction, obtained her license, and is now conducting the undertaking business on the same site and under the same name, Whalen Funeral Home.
Good will has been defined as the probability that customers will continue to buy a specific product, at a particular place, or from the successors of those who have gained the confidence of the public (Montgomery, Federal Taxes [38th ed., 1961], ch. 11, p. 17). This would apply as well to a specific service. Good will is not solely confined to the skill, integrity, reputation or popularity of the one conducting the business; it may be attached to a particular location or locality, or to other elements of value in a going business (Montgomery, Federal Taxes, supra, ch. 7, p. 11). Good will is the value of a business over and above the intrinsic value of its net assets.
Appellant’s first contention is that, as a matter of law, there is no good will attributable to the decedent’s business, which can be included as an asset of his estate, because it was a personal business engaged in by decedent under a State license which terminated when he died.
*828 In Matter of Case (122 App. Div. 343) cited by appellant, it was found that there was no good will, where prior to the time of the decedent’s death all the insurance companies which he had ever represented had withdrawn their business from him, and he had no insurance business or other enterprise at his death to which good will could attach as an incident. The court there was careful to point out however (p. 344): “ The good will of a business, as property, is intangible and must always attach to and rest upon some principal and tangible thing, such as an established business. (20 Cyc. 1276.) It is an advantage or benefit that has been acquired by and belongs to the proprietors of an existing business. (Boon v. Moss, 70 N. Y. 465.) ”
In Matter of Bluestein (197 Misc. 616, mod. on other grounds 277 App. Div. 385, affd. 302 N. Y. 760) also cited by appellant, it was held, that where the practice of the deceased, a certified public accountant, was dependent for its success upon his personal skill and professional qualifications, there was no good will which could be bequeathed.
However, in the instant matter the success of the business can be related to its location between two churches and to the favorable zoning restrictions and not exclusively to the decedent’s personal popularity. Furthermore, anyone holding the same kind of license as that held by the decedent herein would possess the requisite skill to conduct this business. The success of this business, unlike the practice of a lawyer or physician, was not dependent solely on the personal character and skill of the decedent (cf. Coffey v. Metro-Goldwyn-Mayer Corp., 160 Misc. 186, 189). “ Few fields of business are free from supervision, and the licensing of liquor dealers, auctioneers, undertakers and others by the State, and plumbers and electricians by municipalities, does not make professions of those vocations. ’ ’ (Matter of Teague v. Graves, 261 App. Div. 652, 655, affd. 287 N. Y. 549 [1941].)
As it was said in People ex rel. A. J. Johnson Co. v. Roberts (159 N. Y. 70, 83 [1899]): “ Good will embraces at least two elements, the advantage of continuing an established business in its old place, and of continuing it under the old style or name.”
Accordingly, it cannot be held that, as a matter of law, there was no good will attributable to this undertaking business and to the decedent’s estate (cf. Merritt Burial & Cremation Co. v. Merritt Co., 155 App. Div. 565, mod. 214 N. Y. 676 [1915]).
The next question is whether the valuation of good will by the State Tax Commission at $61,495 was arbitrary and capricious.
*829 It has been held that the findings of the taxing authority as to value will be presumed to be correct and the burden of overcoming them rests on the taxpayer (Baker v. Hoey, 33 F. Supp. 799, 801; Cronin’s Estate v. Commissioner of Internal Revenue, 164 F. 2d 561, 566; United States v. Anderson, 269 U. S. 422, 443).
An examination of the entire record discloses that while appellant objected to the application of the formula utilized by the State Tax Commission to fix a value on good will herein, she proposed no alternative method of computing good will — if good will were found to exist — and failed to demonstrate that the State’s application of its formula was unreasonable or improper.
Treasury Regulation section 20.2031-3 defines the fair market value of any interest of a decedent in a business, whether a partnership or a proprietorship, as ‘1 the net amount which a willing purchaser, whether an individual or a corporation, would pay for the interest to a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts ” (Code of Fed. Reg., tit. 26, § 20.2031-3). This is based on a fair appraisal of all assets, tangible and intangible, “including good will”, demonstrated earning capacity of the business, and other factors.
It is generally recognized that where there is a value in excess of the net worth of a decedent’s business, that value is taxable in his estate.
The Tax Commission will look to many separate factors in determining such good will, including the type of business, whether it requires a license, location, and dependency on the skill of the owner.
In assessing good will in undertaking establishments, the State Tax Commission uses a formula which is known as the “six per cent method”: it takes the average total earnings for the last five years of the undertaking business and from this subtracts an amount representing an allowance for annual salary to a single proprietor (twice the salary allowance fixed for the unincorporated business tax). Then from this is deducted 6% of the average invested capital over the five-year period (cost of the premises, real estate taxes, fixtures, etc.). The remaining figure represents excess earnings. This is multiplied by either 3, 4 or 5 (depending on the location, reputation, and number of years in business of the particular business) and the resulting figure is the good will attributable to the business.
In this particular case the State Tax Commission never received any balance sheets or profit and loss statements from *830 this estate. In lieu thereof income tax returns were submitted by the estate. The taxing authorities considered the depreciation schedules of these returns in which the executrix valued the decedent’s home and place of business at $22,100, which was raised by the commission to $25,000. Since one half was considered used in the business, $12,500 was taken towards invested capital. Furniture and fixtures were being depreciated over a 10-year period, but sometimes yearly deductions of $250 were taken and at other times $350. Giving the taxpayer the benefit of the doubt as to value, furniture and fixtures were valued at $3,500. Together with the $12,500 value of the business premises, this gave an invested capital of $16,000.
From the average earnings ($23,259) was subtracted the yearly salary allowance, fixed as discussed above ($10,000), leaving $13,259; 6% of the average invested capital ($16,000), or $960, was then subtracted, leaving average annual excess earnings of $12,299. This was multiplied by five years’ purchase capitalization, to arrive at a good will of $61,495. The five-year figure was selected primarily because with an invested capital of $16,000 and average earnings of $23,000, in one year the investment is completely returned, indicating a large amount of good will, but also because of other factors including the location and zoning.
Application of such a formula to evaluate good will is not unprecedented (Estate of Bluestein, 15 T. C. 770; Estate of Rubenstein, 10 B. T. A. 864; First Nat. Bank of Memphis v. Henslee, 74 F. Supp. 106).
The fact that the Federal taxing authorities made no assessment for good will in this estate is not binding on the State Tax Commission, which is not precluded from making its own findings.
The appellant herein has not met her burden of overcoming the presumption as to the correctness of the findings of the State Tax Commission as to the value of good will. In any event, even were the burden on the taxing authority to justify its findings, it is clear that, while there is no specific rule for the determination of the value of good will and each case must be considered and determined in the light of its own particular facts (MacDonald v. Commissioner of Internal Revenue, 3 T. C. 720, 726), the computation used herein was not arbitrary or capricious but based upon application of a recognized formula to relevant facts. Any value of the business over its tangible assets attributable to the decedent personally was not included in the valuation of good will made by the State Tax Commission, *831 whose formula acts to eliminate consideration of such a factor. Upon a consideration of the entire record, there is substantial evidence to support the position of the commission. Order affirmed.