In the Matter of the Application of WALTER D. TEAGUE, Petitioner, for an Order (in the Nature of Certiorari) to MARK GRAVES and Others, Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, April 30, 1941.

*William C. Mayer* and *Austrian & Lance* [*William C. Mayer, Saul J. Lance* and *George H. Schwartz* of counsel], for the petitioner.

*John J. Bennett, Jr., Attorney-General* [*Wendell P. Brown* and *John H. Spain, Assistant Attorneys-General,* of counsel], for the respondents.

HILL, P. J.  Petitioner brings this proceeding under article 78 of the Civil Practice Act to review a determination of the State Tax Commission which imposed a tax upon him under article 16-A of the Tax Law, measured by the amount of his income as an industrial designer, upon a finding that he was engaged in an unincorporated business within the purview of the Tax Law.  A

tax of four per centum, in addition to all other taxes, is imposed upon any unincorporated business wholly or partly carried on within this State. (Tax Law, § 386-a.) Petitioner is taxable thereunder unless he comes within the exemption contained in section 386, " exclude the practice of law, medicine, dentistry, architecture which under existing law cannot be conducted under corporate structure, and any other case in which more than eighty per centum of the gross income is derived from the personal services actually rendered by the individual * * * in the practice of any other profession and in which capital is not a material income producing factor."

Petitioner asserts that he is engaged in the profession of industrial designing and is within the exemption quoted. The Commission has determined that he is engaged in a trade, business or occupation which, if conducted or engaged in by a corporation, would be taxable. A regulation▌ adopted by the Commission provides that the only professions which it will recognize, other than law, medicine, dentistry and architecture, excluded by the act (§ 386), are accounting, certified shorthand reporting, chiropody, dental hygiene, engineering, optometry, osteopathy, pharmacy, physiotheraphy, teaching and veterinary medicine and surgery. However, as the language of the section would seem to require, the regulation further provides that the Commission will " weigh the representations made by or on behalf of other occupations or vocations when presented " to determine whether they are professions included in the exemption. Taxes for the years 1935, 1936 and 1937 are involved in this proceeding.

Industrial designing as a separate field of endeavor has been developed recently by a small group, which includes petitioner. However, it is now recognized by many institutions of learning. Pratt Institute, Carnegie Institute of Technology, the Universities of Illinois, Michigan and New York now include it in their curriculums. In most instances it is a four-year course leading to a degree of bachelor of arts in industrial design. California and Rhode Island also have schools of design. The petitioner has lectured in many of these courses. He was a member of the Board of Design of the New York World's Fair, representing industrial designing.

Petitioner was " called upon " by the New York, New Haven and Hartford Railroad to work with its engineering staff and the builders of its new streamline coaches in connection with " the details of the interior and exterior design so far as it affected appearance, and the joint efforts * * * resulted in a design as attractive as it is unusual." (*Railway Mechanical Engineer*, Feb.

1935, p. 43.) The September, 1937, *Architectural Record* contains an article concerning the standardization of gasoline service stations erected by the Texas Company (p. 69). " The Texas Company, convinced of the value of a more fundamental solution, retained Walter Dorwin Teague, industrial designer, to study the problem and produce a standardized design for Texaco stations which would meet all geographic, economic and operating requirements." The designs prepared by petitioner were used for more than 1,000 stations. He designed the interiors of the Ford Motor Company exhibits at four recent exhibitions, including those in New York and San Francisco. His designs have been used by DuPont, United States Steel, Eastman Kodak, Consolidated Edison, National Cash Register Company, A. B. Dick Company, Steuben Division of the Corning Glass Works, and other nationally known producers. He is the author of a book entitled " Design This Day," published by Harcourt, Brace & Company of New York, a well-written work of 284 pages with 128 photographic illustrations, among them the Parthenon, cathedrals at Chartres, Rheims, St. Peters, famous bridges, interiors past and present, the Trylon and Perisphere at the New York World's Fair, and automobiles past and recent. These are discussed in his text and the relation of the ancient to the present featured, as is the relation of the form of the structures to their intended functions. It is difficult to select from this volume a brief statement to epitomize the field of activity of the claimed profession. I quote a paragraph from pages 64 and 65, which is an approximation: " The profession of industrial design in its brief career has developed a technique for analyzing the function of a product, and has set up standards for judging functional fitness. It has applied these methods and standards to innumerable objects ranging from domestic and office appliances to automobiles, ships and trains; and to industrial and commercial buildings, offices and shops, and the expositions in which industry explains itself to the public. It has set up a procedure which must be followed in devising housing that shall approximate our cars in efficiency and low cost; in developing a system of transportation whereby our planes, trucks, cars, highways and railroads can be co-ordinated into one smoothly functioning system for the distribution of goods and people; and in creating forms of community living which shall supersede the present unworkable town and city plan." The entries in the income tax report give some indication of petitioner's relation with his clients, " Income from personal services, Fees, $108,983.33; Overhead repaid by clients, $64,311.76."
. The graduates from the universities, institutes and schools who will have scholastic degrees as industrial designers doubtless will

be regarded as professional men. It is paradoxical that petitioner and his present associates now engaged in the field, who are lecturing in these courses and teaching these students, should be classified otherwise.

Licensing by the State and supervision of activities are unsatisfactory standards by which to classify the nature of the occupation. Few fields of business are free from supervision, and the licensing of liquor dealers, auctioneers, undertakers and others by the State, and plumbers and electricians by municipalities, does not make professions of those vocations.

The Supreme Court of the United States, in *United States* v. *Laws* (163 U. S. 258), determined that the employment of a chemist in Germany by the operator of a sugar plantation in Louisiana did not violate the contract labor statutes of the United States, for the reason that a chemist was a professional man, the opinion stating (p. 266): " 'Formerly, theology, law and medicine were specifically known as *the professions;* but as the applications of science and learning are extended to other departments of affairs, other vocations also receive the name. The word implies professed attainments in special knowledge as distinguished from mere skill. A practical dealing with affairs as distinguished from mere study or investigation; and an application of such knowledge to uses for others as a vocation, as distinguished from its pursuit for its own purposes.' There are professors of chemistry in all the chief colleges of the country. It is a science the knowledge of which is to be acquired only after patient study and application. The chemist who places his knowledge acquired from a study of the science to the use of others as he may be employed by them, and as a vocation for the purpose of his own maintenance, must certainly be regarded as one engaged in the practice of a profession which is generally recognized in this country."

*People* v. *Kelly* (255 N. Y. 396) determined that under a zoning law the teaching of singing or music was a profession and not a trade or industry. " The arguments of counsel apparently concede that the exclusions would not reach out to the doctor, the dentist or the lawyer consulting clients at home; but no distinction can be drawn for the purposes here involved between these professions and those of the musician, artist or teacher " (p. 400). Webster defines " profession " as " a calling in which one professes to have acquired some special knowledge used by way either of instructing, guiding, or advising others or of serving them in some art." Petitioner's vocation is a profession rather than a trade or business.

Under the view which I take, the special objection made to the tax for the year 1935 is not important. However, it seems

that under the statute the notice of the assessment was not given within the time prescribed.

The determination should be annulled.

CRAPSER, BLISS and FOSTER, JJ., concur; HEFFERNAN, J., dissents in an opinion.

HEFFERNAN, J. (dissenting). The principal question for determination is whether petitioner's gross income for the years 1935–1937, inclusive, was to the extent of more than eighty per cent derived from personal services actually rendered by him in the practice of a profession in which capital was not a material income-producing factor.

Petitioner asserts that for the years in question he was engaged in the practice of a profession within the meaning of section 386 of the Tax Law and that, consequently, he is exempt from the unincorporated business tax.

Originally the word " profession " was limited to the three learned professions, divinity, medicine and the law. To this group that of arms was later added. In our day the term has become very elastic and we have traveled far beyond the well-known classical professions of earlier days. The denotation of the word " profession " has been extremely liberalized. Quite a variety of occupations are recognized as professions both by statute and the regulations of the State Tax Commission.

It is difficult if not impossible to lay down any strict legal definition of the term because the line of demarcation may vary from time to time. Scientific learning and knowledge, however, are essential requisites in any occupation which may properly be regarded as a profession. I am convinced that the term professional employment can only relate to those occupations universally classed as professions, the general duties and characters of which courts must be expected to understand judicially.

The occupation of petitioner is termed by him as industrial designing. His formal education consisted of a high school course followed by three and one-half years' training in the Art Students' League. He has become successful in his chosen field of endeavor. He has designed photographic equipment, optical goods, meteorological and thermal instruments, glassware, mimeograph machines, motor cars, gas ranges, gas-heating and air-conditioning equipment, light-weight coaches, cash registers, internal grinders, refrigerators, vacuum cleaners and many other appliances.

Petitioner makes no claim that he is authorized to practice as a licensed architect or a graduate engineer. In fact, he has no degree from any school as an industrial designer. Our State Department

of Education issues no license to an industrial designer. It is conceded that no legal reason exists why petitioner's business cannot be incorporated. It seems to me that petitioner's calling cannot possibly be regarded as the practice of a profession. He is neither an architect nor an engineer nor has he had any extensive course of specialized instruction and study in a given field of science. A background of practical training and education does not of itself raise the dignity of his occupation to that of a profession. We are not justified in extending by judicial construction an exemption statute so as to cover a business evidently not intended by the Legislature to be so embraced.

The courts have held that life insurance agents (*Matter of Recht* v. *Graves*, 257 App. Div. 889; leave to appeal denied, 281 N. Y. 886), insurance brokers (*Matter of Otis* v. *Graves*, 259 App. Div. 957), undertakers and embalmers (*O'Reilly* v. *Erlanger*, 108 id. 318), custom house brokers (*People ex rel. Tower* v. *State Tax Comm.*, 257 id. 1064; affd., 282 N. Y. 407; *People ex rel. Robinson* v. *Graves*, 259 App. Div. 956; leave to appeal denied, 284 N. Y. 821) and textile brokers (*People ex rel. Seidman* v. *Graves*, 260 App. Div. 898) are not professionals. It is obvious to us that the practice of a profession implies a vocation requiring higher education and learning.

The determination of the State Tax Commission should be confirmed, with fifty dollars costs and disbursements.

Determination annulled, with fifty dollars costs.