In the Matter of ALFRED GEIFFERT, JR., Appellant, against CARROLL E. MEALEY et al., Constituting the State Tax Commission, Respondents.

Argued November 29, 1944; decided December 30, 1944.

*Elliot F. Glassberg* for appellant. I. Petitioner, a landscape architect, is engaged in the practice of a profession within the meaning of section 386 of the Tax Law. (*United States* v. *Laws,* 163 U. S. 258.) II. The intent of section 386 and the decided cases is to regard work of the kind done by petitioner as a profession and therefore exempt from taxation under article 16-A of the Tax Law. (*People ex rel. Tower* v. *State Tax Commission,* 282 N. Y. 407; *Matter of Teague* v. *Graves,* 261 App. Div. 652, 287 N. Y. 549.)

*Nathaniel L. Goldstein, Attorney-General (John C. Crary, Jr., Orrin G. Judd, Wendell P. Brown* and *Henry S. Manley* of counsel), for respondents. The exemption from taxation under article 16-A of the Tax Law, of income from the practice of certain unspecified professions in certain cases, is to be strictly construed; petitioner has not sustained the burden of bringing himself within it. (*People ex rel. Tower* v. *State Tax Commission,* 282 N. Y. 407; *Matter of Teague* v. *Graves,* 261 App. Div. 652; *Matter of DeVries* v. *Graves,* 266 App. Div. 1030, 292 N. Y. 529.)

CONWAY, J. This is a proceeding under article 78 of the Civil Practice Act, to review a determination of the State Tax Commission imposing unincorporated business taxes upon petitioner for the years 1938, 1939 and 1940, under Tax Law, article 16-A.

The petitioner is a landscape architect and the question presented for our determination is whether that calling, as practiced by petitioner, may be termed a profession within the meaning of Tax Law, section 386. That section, in part, provides that words " unincorporated business " exclude " the practice of law, medicine, dentistry, architecture which under existing law cannot be conducted under corporate structure, and any other case in which more than eighty per centum of the gross income is derived from the personal services actually rendered by the individual or the members of the partnership or other entity in the practice of any *other profession* and in which capital is not a material income producing factor." (Emphasis supplied.)

It is conceded that petitioner uses no capital save for office equipment, payment of salaries and office rent in advance of collection of his fees, and it is not contended that petitioner's income as landscape architect is derived from sources other than personal services. Finally, it is frankly acknowledged that the " skill of the petitioner, and the importance of the projects upon which he has worked, are unquestioned upon the present record." For the purpose of this opinion, it will be unnecessary to list the projects. Thus the sole question presented is whether landscape architecture is one of the " other " professions contemplated by the statute.

The petitioner was a pioneer in the field. Now a number of universities and colleges, some in the East and some in the West,

have formal courses of study leading to degrees in landscape architecture. Among those in the east are Harvard, Cornell, Pennsylvania State, Ohio State and University of Illinois. There are three others on the Pacific Coast, whose names were not given in the testimony. Two degrees are obtainable, depending upon the institution of learning, namely, Bachelor of Science in Landscape Architecture and Master of Landscape Architecture. We quote a description of the course of study leading to the degree of Bachelor of Landscape Architecture at Cornell University, as outlined by one of the witnesses: " The course is a five year one given under the *College of Architecture.* The studies of landscape architecture take in the identical courses with the architect school through the first two years and the third year they start specializing in more or less landscape architecture planting, as well as courses in civil engineering under the *College of Engineering,* which comprise surveying, mechanics, concrete construction. Along with that goes a course in physics, chemistry, geometry, calculus and several other mathematical sources [courses] which I do not remember. We also studied under the *College of Horticulture.* The balance of the course we studied history of architecture, history of landscape architecture; naturally languages and throughout the designated course we took problems similar to the same problems as architects do. That, in brief, gives you the general description of the course." (Emphasis supplied.) Landscape architecture appears to lie between the professions of architecture and engineering and to require familiarity with both.

Petitioner has no degree because none was given when he was pioneering, but that is not important here because of the extent, variety and importance of his work. He has collaborated on the articles on landscape architecture for the Encyclopedia Britannica and the Encyclopedia of Horticulture. He is a member of the American Society of Landscape Architects, and has been secretary and trustee of the national organization of that society as well as president of its New York chapter. He has lectured on landscape architecture at Yale, Harvard, Princeton, Cornell and Ohio State Universities.

A general definition of a profession was outlined in *People ex rel. Tower* v. *State Tax Commission* (LEWIS, J., 282 N. Y. 407), in which we held that customhouse brokers were not

exempt from the unincorporated business tax. There we said (p. 412): " We find nothing in the record to prove that the service rendered by a customhouse broker requires *knowledge of an advanced type in a given field of science or learning gained by a prolonged course of specialized instruction and study.* Such a requirement we regard as implicit in the term ' professional ' when given its legal application and it is read in its context in the statute here involved." (Emphasis supplied).

Another definition will be found in the following regulation of the State Tax Commission:

" What is a profession? In general, it may be said that a profession includes any occupation or vocation in which a professed knowledge of some department of science or learning is used by its practical application to the affairs of others, either advising, guiding or teaching them, and in serving their interests or welfare in the practice of. an art founded on it. The word implies attainments in professional knowledge, as distinguished from mere skill, and the application of such knowledge to uses for others as a vocation.

" The Commission presently recognizes only the following as professions. It will weigh the representations made by or on behalf of other occupations or vocations when presented: a. Accounting b. Certified shorthand reporting c. Chiropody d. Dental hygiene e. Engineering f. Optometry g. Osteopathy h. Pharmacy i. Physiotherapy j. Teaching k. Veterinary medicine and surgery." (State Tax Commission, Personal Income Tax Regulations, Manual 40, p. 225.)

We recently weighed " the representations made by or on behalf of " industrial designing in *Matter of Teague* v. *Graves* (261 App. Div. 652, affd. 287 N. Y. 549). We noted that the activity of industrial designer (engineering) was recognized as a profession in many universities and colleges and that the qualifications of the petitioner in that proceeding measured up to all the standards of a profession. As to the fact that the petitioner there had no degree, the Appellate Division (261 App. Div. at pp. 654–5) used language peculiarly apposite here: " The graduates from the universities, institutes and schools who will have scholastic degrees as industrial designers doubtless will be regarded as professional men. It is paradoxical that petitioner and his present associates now engaged in the field,

who are lecturing in these courses and teaching these students, should be classified otherwise."

The *Teague* case cannot be distinguished from the instant one and is in line with the necessity for recognizing in the law, as in our universities, new professions which have been called into being to take care of modern requirements of our expanding civilization.

The order of the Appellate Division should be reversed and the determination of the State Tax Commission annulled, with costs in all courts.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, LEWIS, DESMOND and THACHER, JJ., concur.

Order reversed, etc.