In the Matter of HAROLD E. SUNDBERG, Appellant, against GEORGE M. BRAGALINI et al., Constituting the State Tax Commission, Respondents.

Third Department, December 2, 1953.

*Owen D. Connolly, Jr.,* for appellant.

*Louis J. Lefkowitz, Attorney-General (Edwin R. Oberwager* and *Paxton Blair* of counsel), for respondents.

GIBSON, J. The State Tax Commission has determined that petitioner's activities in 1950, 1951 and 1952, as agent or representative of certain manufacturers of industrial machinery and equipment, constituted the conduct of an unincorporated business within the meaning of article 16-A of the Tax Law. Petitioner, a graduate electrical engineer, licensed under the laws of New York as a professional engineer, claims the benefit of the exclusion (by the statute as then written) of cases of the practice of law, medicine, dentistry and architecture " and any other case in which more than eighty per centum of the gross

income is derived from the personal services actually rendered by the individual  *  *  *  in the practice of any other profession and in which capital is not a material income producing factor." (Tax Law, § 386.) Petitioner contends, further, to be within the additional exclusion applicable, under the sections cited, to an individual "with respect to compensation for services rendered by him as an employee  *  *  *  unless such compensation constitutes receipts of a business regularly carried on by such individual." Rejecting these contentions, the commission affirmed the assessment of an unincorporated business tax for each of the years in question. We review the determination pursuant to article 78 of the Civil Practice Act.

Petitioner's earnings consisted of sales commissions and were derived from four separate and unrelated corporations. Each company paid petitioner commissions on sales made by him within his territory and, also, on sales made by others within his territory. In certain cases he received commissions on sales made outside his territory, to which his efforts had contributed.

On his tax returns for the years in question, petitioner indicated that he was self-employed and stated his occupation as " sales engineer " or " manufacturers' agent ". He maintained his own office and business telephone. His letterhead bore the legend " Manufacturers' Sales Representative ". He paid social security taxes as a self-employed person and none of the companies withheld income taxes or paid unemployment or social security taxes on his account. He was subject to little or no supervision or control by any of the corporations, the principal requirement of each being that its requests that he visit particular customers be complied with within a reasonable time.

Upon the evidence, the commission's determination that petitioner was not an employee within the meaning of section 386 was clearly warranted. The case is parallel in many respects to that of *People ex rel. Wittich* v. *Browne* (270 App. Div. 774, affd. 296 N. Y. 720) in which the claim of employee status was rejected despite proof more favorable to the taxpayer than that adduced here.

We turn then to consideration of the additional, and perhaps more significant, issue — that as to the professional or non-professional nature of the work.

The exclusionary provisions of the statute (Tax Law, § 386) impliedly demand that the taxpayer be qualified and legally authorized to practice a profession, as petitioner clearly was; further require that capital shall not be a " material income producing factor ", as respondents concede to be the fact here;

and finally impose the test that more than 80% of the gross income in question be derived from personal services rendered in the practice of the profession. Thus the issues narrow to the question whether petitioner's services were, as he contends, rendered in the practice of the engineering profession.

The major portion of the income in question in each year was received from Philadelphia Gear Works, Inc. Petitioner's contract with that company referred to him as " Sales Representative " and required him " to use his best efforts to promote the sale of products of [the] Company ". These included industrial gears, mechanical couplings, fluid mixers, reducers and automatic valve control devices. Petitioner's testimony indicated that a majority of the orders which this company filled involved " something special ". In some of these cases petitioner made or suggested adaptations or changes in design suited to the customers' needs. It is a reasonable inference from the record, however, that usually the technical problem went to the company's engineering staff, often, perhaps, with petitioner's suggestions and recommendations.

Another company with which petitioner was associated manufactured internal gauges. His contract with this company referred to him as " Seller " and provided that he would " diligently prosecute the sale " of the company's products. The third company made screening machines, and the fourth manufactured industrial thermometers. So far as appears, there were no formal written contracts with these two companies. The record is clear that petitioner's sales for the three latter companies required less technical knowledge and involved less of the work of design and adaptation than did the work performed for the gear company.

There seems little question that petitioner's engineering education and experience were in some cases of value in his work, but there is no evidence of any substance that they were essential to it or that either was prerequisite to his contractual arrangements with any of the companies concerned. Neither is there any intimation that comparable education and training were required or were usual in the cases of others engaged in similar business activities with these or other companies manufacturing similar lines. Essentially, petitioner's work was the sale of his principals' products. He was compensated on a commission basis which (with " one slight variation ") was the same whether or not he applied professional skill in a particular transaction; and that basis was, in fact, applicable to certain sales made without any effort, or even knowledge, on his part.

The advantageous utilization of professional knowledge in a business does not, of course, necessarily constitute the practice of the profession. It would not, we suppose, be seriously urged that a lawyer conducting business as a real estate broker or as an insurance agent, or a physician engaged in the sale of medical supplies or surgical equipment, was practicing his profession, however helpful his professional education to the conduct of his business. The term '' profession '' implies '' knowledge of an advanced type in a given field of science or learning gained by a prolonged course of specialized instruction and study.'' (*People ex rel. Tower* v. *State Tax Comm.*, 282 N. Y. 407, 412.) Concededly, petitioner had, and was authorized to practice, a profession; and, concededly, his professional knowledge was helpful in his sales business. It is clear, upon this record, however, that ''knowledge of an advanced type '', and in the high degree contemplated by the definition quoted, was not called for in his work.

Neither do petitioner's activities seem to meet the usual concept of professional practice as comprehending services or disinterested advice for the benefit of the person served or advised, the latter ordinarily retaining the services and making compensation for them. (Cf. *Matter of Geiffert* v. *Mealey,* 293 N. Y. 583, 586, quoting and approving the commission's regulation defining '' profession ''.) The obvious purpose of petitioner's advice to prospective customers and the application of professional knowledge to their problems was to effect sales of machinery, to the profit of petitioner and his principal. We need not, however, give compelling weight to these considerations in the case before us as it seems to us that here a more pragmatic test may be applied.

We conceive a proper test to be whether the application of professional education, training and skill was either essential to produce the income, or so material to its production as reasonably to warrant the conclusion that without them the taxpayer could not have profitably pursued the particular occupation, under normal conditions of business and competition. According to this standard, petitioner's status was clearly not that of a professional practitioner.

The determination should be confirmed, with $50 costs.

BERGAN, J. P., COON, HERLIHY and REYNOLDS, JJ., concur.

Determination confirmed, with $50 costs.