Dye, J.
Article 148 of the Education Law (Landscape Architecture), which provides for the licensing of landscape architects, was added by chapter 1082 of the Laws of 1960, effective April 1,1961. The statute (a) prohibits the unlicensed practice of landscape architecture after July 1,1961 (§ 7321); (b) establishes a Board of Examiners to carry out the licensing provisions of the statute (§ 7322); (c) prescribes penal sanctions for the violations of said statutes (§ 7328), and (d) defines the practice of landscape architecture as follows (§ 7320, subds. 2, 3):
“2. ‘ Landscape architect ’ means a person who engages in the practice of landscape architecture as hereinafter defined.
“ 3. A person practices landscape architecture within the meaning and intent of this article who performs professional services such as consultation, investigation, reconnaissance, research, planning, design, or responsible supervision in connection with the development of land areas where, and to the extent that the dominant purpose of such services is the preservation, enhancement or determination of proper land uses, natural land features, ground cover and planting, naturalistic and aesthetic values, the settings and approaches to structures or other improvements, natural drainage and the consideration and determination of inherent problems of the land relating to erosion, wear and tear, blight or other hazards.”
The statute further provides (§ 7326): “ 1. This article shall not be construed to affect or prevent the practice of engineering * * * nor to apply to the business conducted in this state by any agriculturist, horticulturist, tree expert, arborist, forester, nurseryman or * * * landscape contractor, garden or lawn caretaker or grader or cultivator of land, as these terms are generally used, except that no such person shall use the desig *437 nations landscape architect, landscape architectural or landscape architecture unless licensed under the provisions of this article.”
Five of the plaintiffs applied for licenses without examination pursuant to the “ grandfather clause ” contained in article 148 of the Education Law (§ 7323, subd. 3). The Board of Examiners denied their applications on the grounds that they were not qualified. Plaintiffs then instituted this action seeking (1) a declaration that article 148 of the Education Law is unconstitutional; and (2) an injunction restraining defendants from taking any steps to carry out the provisions of the statute.
The practice of landscape architecture is recognized as the practice of a profession in this State (Matter of Geiffert v. Medley, 293 N. Y. 583) and elsewhere (cf. Louisiana v. McIlhenny, 201 La. 78; California, West’s Ann. Business and Professions Code, ch. 3.5, § 5615 et seq.; Oregon, Rev. Stat., tit. 52, ch. 671, § 671.310; Code of Georgia, tit. 84, ch. 84-40, §§ 84-4001 through 84-4009; Louisiana, Rev. Stat., tit. 37, ch. 22, § 1961) as a profession embracing a field of highly technical and specialized knowledge and activities “ between the professions of architecture and engineering ” (Matter of Geiffert v. Mealey, supra, p. 585). Such a determination “is in line with the necessity for recognizing in the law, as in our universities, new professions which have been called into being to take care of modern requirements of our expanding civilization” (Matter of Geiffert v. Mealey, supra, p. 587).
We are told professional courses leading to a degree in landscape architecture are now being taught in 17 of the leading universities. Also for many years the cities and States have given civil service examinations for the appointment of landscape architects.
Implicit in the term “professional” is knowledge of advanced type in a given field of science or learning gained by a prolonged course of specialized instruction and study (People ex rel. Tower v. State Tax Comm., 282 N. Y. 407; Matter of Teague v. Graves, 261 App. Div. 652, affd. 287 N. Y. 549). The Legislature deems the practice of landscape architecture a matter of public concern and enacted the challenged legislation “in order to safeguard life, health and property” (§ 7321). The plaintiffs disagree, contending that the practice of landscape architecture is not an activity that affects in any substantial degree the “ life, health and property of the public
*438 The testimony at the trial established that the regulation and practice of landscape architecture was clearly related to the public health and welfare and, as such, constituted a valid exercise of the police power, thus affording a substantial basis for the declared public policy.
As we know, and as so well stated by Desmond, J., as he then was, in Defiance Milk Prods. Co. v. Du Mond (309 N. Y. 537, 540-541), “ Every legislative enactment carries a strong presumption of constitutionality including a rebuttable presumption of the existence of necessary factual support for its provisions (Borden’s Co. v. Baldwin, 293 U. S. 194, 209, 210). If any state of facts, known or to be assumed, justify the law, the court’s power of inquiry ends (United States v. Carotene Products Co., 304 U. S. 144, 154). Questions as to wisdom, need or appropriateness are for the Legislature (Olsen v. Nebraska, 313 U. S. 236, 246). Courts strike down statutes only as a last resort (Matter of Ahern v. South Buffalo B,y. Co., 303 N. Y. 545, 555, affd. 344 U. S. 367) and only when unconstitutionality is shown beyond a reasonable doubt (Lindsley v. Natural Carbonic Cas Co., 220 IT. S. 61, 79; Matter of Fay, 291 N. Y. 198, 206, 207). But, for all that, due process demands that a law be not unreasonable or arbitrary and that it be reasonably related and applied to some actual and manifest evil (Matter of Jacobs, 98 N. Y. 98,110; Fisher Co. v. Woods, 187 N. Y. 90; Nebbia v. New York, 291 U. S. 502).”
To be sure, section 7320 defining the activities of one engaged in landscape architecture is couched in language which, standing alone and without more, might be regarded as too general, but the Legislature did not stop with the generality but went further by enacting section 7326 in which it is explicitly stated that in construing the article it shall not be construed to prevent the practice by licensed engineers, architects and other licensees, but even members of such licensed professions except architects may not use the designation “ landscape architect ”, “ landscape architecture ” or “ landscape architectural ” unless so licensed and it also exempts from its operation a long list of designated occupations and activities (see § 7626 quoted supra).
These terms describing the various exempt businesses are well recognized. No evidence was offered at the trial to define or *439 describe the practices included within the businesses so exempted and, under such circumstances, reference to a dictionary is permissible (Cline v. Frink Dairy Co., 274 U. S. 445). The trial court looked to Webster’s dictionary under the theory that ‘‘‘ where the meanings and terms employed in the statute have long been recognized in law and life, they will be considered sufficiently definite’” (Bellows v. Merchants Desp. Transp. Co., 257 App. Div. 15, affd. 283 N. Y. 581). The learned Trial Justice concluded that little confusion is likely to or did result from such expressions. When the prohibitions of section 7321 are read in conjunction with the exceptions contained in section 7326, a sufficiently clear standard of conduct is set forth to give fair notice to one concerned with or engaged in the activities regulated as to what acts are criminal and those that are innocent. He accordingly rejected the plaintiffs’ challenge made on the grounds that the statute is a denial of due process as being without merit.
Nor is any merit to be ascribed to the contention, that the statute constitutes an improper delegation of legislative power. Boards of Examiners are the usual and ordinary bodies to pass on the qualifications for professional preferment. This is not rendered bad by giving the board some discretion in satisfying itself as to the sufficiency of the grade and character of an applicant’s showing. It is not unlike the problem presented in National Psychological Assn. v. University of State of N. 7. (8 N Y 2d 197, 204, opp. dsmd. 365 U. S. 298) where we held it was not an unlawful delegation of legislative power to permit the board to determine the ‘ ‘ substantial equivalent ” of a doctoral degree, as well as to determine what constituted ‘‘ satisfactory supervised experience” (see, also, Matter of Marburg v. Cole, 286 N. Y. 202).
In passing, it is interesting to note that article 147 of the Education Law, dealing with the licensing of architects requiring an applicant to “ submit evidence of practical experience in architectural work of a grade and character satisfactory to the board”, has successfully withstood a challenge directed to its validity as an improper delegation of legislative power (Bowen v. Schenectady, 136 Misc. 307, affd. 231 App. Div. 779 [1930]). As we said in Chiropractic Assn. of N. Y. v. Hilleboe (12 *440 N Y 2d 109), in determining whether sufficient standards had been provided to carry out the legislative purpose, ‘ ‘ Although standards or guides must be prescribed where legislative power is delegated, it need be done [Matter of City of Utica v. Water Pollution Control Bd., 5 N Y 2d 164] in only so detailed a fashion as is reasonably practical in the light of the complexities of the particular area to be regulated.”
While no express provision is made for the continuance of existing businesses falling within the designations mentioned in section 7326, continuance of businesses so exempted does not jeopardize the proprietors unless they represent and hold out to the public that they are “ landscape architects ” (“ landscape architectural” or “landscape architecture ”), without having been licensed as such. Restricting such designations to licensed personnel is not an invasion of a vested right. The evil to be remedied by the instant statute is that of restricting the incompetent and untrained from practicing the profession of landscape architecture. Further, the preliminary requirements as to education, citizenship, good character and the protection afforded to persons covered by the “ grandfather clauses ” to the holders of licenses issued by sister States, the use of temporary permits where indicated by circumstances — all indicate that the Legislature has no intent to interfere with or disturb the normal conduct of the businesses falling fairly and in common parlance with the exempted designations.
The order of the Appellate Division should be affirmed, without costs.