Fuchsberg, J. (dissenting).
While I agree with the majority that it is for the Tax Commission to make the initial determinations both as to which occupations are properly classified as professional and as to whether a given applicant for the exception is actually practicing the profession for which he is qualified, I do not believe that our review of such administrative determinations is so limited that we cannot recognize error of law or lack of substantial evidence when we see them. In my view, both are present here.
The Tax Commission found that these two petitioners work on a free-lance basis. Each one accepts commissions from magazines for photographic essays illustrative of a general theme selected by the magazine editors. In some instances, the entire "story” is told by the pictures; in others, the photographs complement a writer’s text. Neither the text nor the pictures are directed toward the promotion of any specific product; rather, both are directed toward the communication of their creators’ ideas or concepts. It was in the face of these findings, that the commission ruled that petitioners were not practicing a profession, rationalizing its decision on the ground that their work was expected to appear in periodicals, which, like most newspapers for example, are owned by publishers who conduct them as private business enterprises.
Certainly, the petitioners, if practitioners of a profession within the scope of the statute, were not ineligible for the exemption because the professional activity to which they devoted themselves produced the means of their support. Nor is there a disqualifying commercial taint because those who pay for the activity that produces the income for an artist are profit-motivated in doing so. If that were so, lawyers and physicians, who are specifically covered by the statute, would be ruled out because they engage in private practice.
In short, the test is not simply whether the activity produces an income or not. It is, rather, whether the professional who creates a manifestation of his own concepts, whether of imagination, or of reality, or of beauty, does so unfettered by restrictions on his judgment placed there by employers or by *266 the need to make a product look commercially appealing (see Matter of White v Murphy, 11 AD2d 854, affd 9 NY2d 995; Matter of Voorhees v Bates, 308 NY 184). It is not merely what he does, but how he does it.
The commission has been compelled to recognize that "artists” and, for that matter, "musicians” are professional classifications within the embrace of the "other profession[s]” contemplated by subdivision (c) of section 703 of the Tax Law (20 NYCRR 203.11 [b] [1] [iv]). And the work of a painter, for instance, certainly does not become a commercial product because it is sold to or through a gallery, rather than to an individual, any more than poets and writers are commercial rather than professional persons because they earn their livings from the publication of their work in books or magazines sold for profit by publishers. In the same way, the petitioners’ work forms a part of the content of the magazines in which it appears and not a part of the advertising such publications may sell for supplemental revenue (cf. Matter of White v Murphy, supra).
The vital distinction here is thus between the artist and the artisan. It is not dependent on the medium in which the creator works. Creative concepts can be expressed with the help of a variety of implements, be they the brush of a Pablo Picasso, the acetylene torch of an Alexander Calder, the piano of an Artur Rubenstein, or the camera of an Ansel Adams.
Any view, therefore, which confines the definition of an artist to one who paints pictures meets neither the spirit nor the letter of the statute and regulation before us. It ignores completely that photography has for long now taken its place alongside our older art forms and "artistic” photographers alongside "artistic” painters, "artistic” sculptors and "artistic” writers. As the Encylopedia of World Art records: "From the time of World War I, artistic photography has grown in volume and achievements, accompanied by the emergence of new forms and new personalities. The efforts of photographic 'chroniclers’ such as Henri Cartier-Bresson, Werner Bischof, Margaret Bourke-White, Dorothea Lange, Walker Evans, Barbara Morgan, Bernice Abbott, and the painter Ben Shahn (q.v.) combined to make photography heir to the historical and anecdotal functions once fulfilled by painting * * * Andreas Feininger, author of the Creative Photographer (1955), believes that 'creative photography’ takes on the quality of art according to the photographer’s capacity for selection; Otto *267 Steinert maintains that there is an artistic quality inherent in the photographic medium, valid in itself and not in its pictorial content or evocative elements. * * * As was the case with design,* advertising, and prefabricated architecture, photography developed and entered into the realm of the arts by merit of technological progress and the intervention of artificial, sometimes mechanical means; however it has been successfully transformed into a valid medium or artistic expression, presenting new and original creations.” (Vol XI, pp 316-317 [McGraw-Hill, 1966]; see, also, Flemming, Arts and Ideas [Holt, Rinehart & Winston, 1968], pp 504-505; Newhall, History of Photography [produced by the Museum of Modern Art, distributed by Doubleday & Co., 1964], p 201.)
The evidence indicates that the petitioners are following squarely in the footsteps of the illustrious chroniclers named above. As such, they are fully entitled to the appellation "artist” under the tax regulation in issue here. To deny this to them is tantamount to saying, as indeed the commission in effect said, that no photographers are ever to be regarded as artists.
Accordingly, I would reverse the order of the Appellate Division.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones and Cooke concur with Judge Wachtler; Judge Fuchsberg dissents and votes to reverse in a separate opinion.
Judgments affirmed, with costs.

 See Matter of Teague v Graves (261 App Div 652, affd 287 NY 549), in which this court recognized as a profession the new field of industrial design, based on the achievements of a single generation of its practitioners plus the approval signified by its inclusion in the curricula of a number of distinguished colleges and universities as a specialized field in which professional degrees are granted. (The petitioner in Teague did not have one of these degrees; having taught himself the profession, he then taught classes at some of these institutions.) If such educational signals of recognition strike some amongst us as important, then it should be noted here that the degree of Masters in Fine Arts in Photography is awarded by such universities as Harvard, Yale, Princeton, and our own State University. This is the same degree awarded to those budding painters, art historians, and musicians who choose to take their apprenticeships within the confines of a traditional college setting.