In the Matter of WILLIAM R. FRYE, Petitioner, v COMMISSIONER OF FINANCE OF THE CITY OF NEW YORK et al., Respondents.

First Department, August 11, 1983

**APPEARANCES OF COUNSEL**

*William R. Frye,* petitioner *pro se.*

*Stanley Buchsbaum* of counsel (*Gale Zareko, Alvin H. Kaufer* and *Frances J. Henn* with him on the brief; *Frederick A.O. Schwarz, Jr., Corporation Counsel,* attorney), for respondents.

**OPINION OF THE COURT**

FEIN, J.

Petitioner is a self-employed journalist. The nature of his employment, activities and background are adequately described in the dissent. The issue is whether the Commissioner of Finance of the City of New York abused his discretion in determining that petitioner was not a professional within the meaning of section S46-2.0 of the Administrative Code of the City of New York and therefore not exempt from the unincorporated business tax. The code

provision reads in part as follows: "(c) Professions. — The practice of law, medicine, dentistry or architecture, and the practice of any other profession in which capital is not a material income producing factor and in which more than eighty per centum of the unincorporated business gross income for the taxable year is derived from personal services actually rendered by the individual or the members of the partnership or other entity, shall not be deemed an unincorporated business."

This exemption for professions was identical with a provision in subdivision (c) of section 703 of the Tax Law (Unincorporated Business Income Tax). The only relevant cases on the meaning of those exemptions arose under State law. It is appropriate, therefore, to consider those cases in determining the meaning of the exemption in the city law. Since petitioner seeks tax exemption from a general law imposing a tax, the burden is on him to bring himself within its ambit. As stated in *Matter of Grace v New York State Tax Comm.* (37 NY2d 193, 196): "An exemption from taxation 'must clearly appear, and the party claiming it must be able to point to some provision of law plainly giving the exemption' (*People ex rel. Sav. Bank of New London v Coleman,* 135 NY 231, 234; see *Matter of Young v Bragalini,* 3 NY2d 602, 605-606) * * * This is because an exemption is not a matter of right, but is allowed only as a matter of legislative grace (cf., e.g., *Colgate v Harvey,* 296 US 404, 435)."

The State Tax Commission treated the tax exemption as limited to those whose activities were analogous to those specifically named in the Tax Law. Thus, the most recent State regulations (20 NYCRR 203.11 [b] [1] [ii]) recognize the following professions as coming within the exemption, in addition to those named in the Tax Law:

| | |
|---|---|
| Public accountancy | Osteopathy |
| Certified shorthand reporting | Pharmacy |
| Chiropody and Podiatry | Physiotherapy |
| Chiropractic | Certified social work |
| Dental hygiene | Veterinary medicine and surgery |
| Professional engineering and land surveying | Psychology |
| Nursing | Landscape architecture |
| Optometry (ophthalmic dispensing) | Teaching |

Manifestly these occupations are analogous to those listed in the statute. Journalism, whatever its merits, is not.

The cases support the commissioner's conclusion that one with a background and occupation such as petitioner's is not engaged in a profession made exempt under the statute. Pertinent is the language of the Court of Appeals in excluding customhouse brokers from the exemption. In *People ex rel. Tower v State Tax Comm.* (282 NY 407, 412) the Court of Appeals stated: "We find nothing in the record to prove that the service rendered by a customhouse broker requires knowledge of an advanced type in a given field of science or learning gained by a prolonged course of specialized instruction and study. Such a requirement we regard as implicit in the term 'professional' when given its legal application and it is read in its context in the statute here involved."

The evidence as set forth in the dissent and as recited by petitioner does not demonstrate that he followed a "prolonged course of specialized instruction and study" to prepare himself for his career, or indeed that such a special course of study is required of a practicing journalist.

The dissent relies upon *Matter of Sundberg v Bragalini* (7 AD2d 15), where a graduate electrical engineer, licensed by the State of New York as an electrical engineer, who utilized his training to sell specialized types of equipment, was held not to be entitled to the exemption. The court relied upon the definition in *People ex rel. Tower v State Tax Comm.* (*supra,* p 412) that a profession imports "knowledge of an advanced type in a given field of science or learning gained by a prolonged course of specialized instruction and study." That standard was used to exclude the engineer. It cannot be expanded to include the journalist.

The point is well made in the most recent case interpreting the State statute (*Matter of Koner v Procaccino,* 39 NY2d 258, 263), where the court stated: "There is no doubt then that an artist may be a professional within the meaning of the statute. But it does not necessarily follow that all income earned by an artist qualifies for the professional exemption. The final question, in other words, is not

whether the taxpayer is an artist, but rather whether the particular activities he is engaged in constitute the 'practice of [a] profession' as opposed to a purely commercial or business enterprise. This often becomes a delicate question determined solely by the facts of the particular case. It is, in short, essentially a question of fact to be determined by the commission subject to very limited judicial review.'" As *Koner* holds, the scope of judicial review is limited. This is consistent with the rule laid down in *Matter of Howard v Wyman* (28 NY2d 434, 438): "It is well settled that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld * * * 'The administrative determination is to be accepted by the courts "if it has 'warrant in the record' and a reasonable basis in law" [*Board v Hearst Pubs.*, 322 US 111, 131.]'"

The principles involved in making the determination are well set forth in *Matter of Rosenbloom v State Tax Comm.* (44 AD2d 69, 71, mot for lv to app den 34 NY2d 518): "In determining what activity constitutes the practice of a profession consideration should be given to the following factors: (1) a long-term educational background generally associated with a degree in an advanced field of science or learning; (2) the requirement of a license which indicates sufficient qualifications have been met prior to engaging in the occupation; (3) the control of the occupation by standards of conduct, ethics and malpractice liability; and (4) the barrier to carrying on the occupation as a corporation".

By these standards petitioner is not engaged in a profession within the meaning of the statute. He did not complete the course at a specialized school of journalism, nor obtain a degree therefrom. He does not have, nor is he required to have, a license to indicate that sufficient qualifications have been met prior to engaging in his occupation. Nor is he subject to any disciplinary body which has power to supervise his activities. There is no organized body of rules, standards of conduct or ethics to which he is required to conform. Concededly, the council referred to in the dissent did not exist at the times in question. There are no recognized standards for entry into the field of journalism, and no agency which passes upon one's qualifications to be

a journalist. As the cited cases demonstrate, these are the hallmarks of a profession within the meaning of the exemption. It does not denigrate the petitioner to say that he is not practicing a profession within the meaning of the tax exemption statute. The dictionary definition relied upon in the dissent is palpably not applicable to what is here intended. It reads: "One who has an assured competence in a particular field or occupation." Many an experienced shoemaker, plumber, blacksmith or artisan of another type would fit that definition. That does not make them professionals for our purposes. If all who write columns for newspapers are held to be professionals, within the meaning of the exemption statute, it might well extend to the author of any kind of newspaper column, be the subject sports, society, finance, astrology, backgammon or gossip.

Equally untenable is the suggestion that denying the exemption to the petitioner would be unconstitutional because he is a journalist. *Minneapolis Star & Tribune Co. v Minnesota Comr. of Revenue* (460 US ___), relied upon by the dissent, has no application to our problem. That case involved a tax specifically imposed upon the press. This is not such a case. A general tax is constitutionally applied to a newspaper or to a writer (*Matter of Steinbeck v Gerosa,* 4 NY2d 302, 315, 316, app dsmd for want of substantial Federal question, 358 US 39; *Tampa Times Co. v City of Tampa,* 158 Fla 595, app dsmd for want of substantial Federal question, 332 US 749).

Accordingly, the petition seeking a review of a determination dated December 18, 1981 and two determinations dated December 24, 1981, is granted only to the extent of annulling, on the law, the determination dated December 24, 1981 finding petitioner liable for commercial rent or occupancy tax, and otherwise the petition is dismissed and the determination dated December 18, 1981 with respect to the unincorporated business tax and that of December 24, 1981 with respect to the occupancy tax is confirmed, all without costs and disbursements.

KUPFERMAN, J. P. (dissenting in part). The only difference between us is on the question of whether the taxpayer under the statute may be considered to be a "professional".

In view of his background, education, learning and work, it was an abuse of discretion for the Commissioner of Finance to determine that he was not a professional and therefore not exempt from the unincorporated business tax. (Administrative Code of City of New York, § S46-2.0.)

The code provision is as follows: "(c) Professions. — The practice of law, medicine, dentistry or architecture, and the practice of any other profession in which capital is not a material income producing factor and in which more than eighty per centum of the unincorporated business gross income for the taxable year is derived from personal services actually rendered by the individual or the members of the partnership or other entity, shall not be deemed an unincorporated business."

Petitioner is a journalist, now self-employed, deriving more than 80% of his income from an internationally syndicated weekly newspaper column on world news analysis entitled "The World in Focus", as well as from magazine articles and media appearances (all personal services) drawing on his expertise in international affairs. During the taxable years in question, petitioner's syndicated column appeared in between 50 and 150 newspapers in numerous countries. In the course of his work, petitioner traveled abroad extensively to meet and consult with editors of foreign newspapers that carried his column and to attend newsworthy events for which foreign newspapers sometimes paid petitioner's expenses of attending.

Although the Administrative Code of the City of New York does not really define "professional", and no reported cases arising under the former exemption from New York City Unincorporated Business Income Tax discuss the scope of the exemption, subdivision (c) of section 703 of the Tax Law (Unincorporated Business Income Tax) contains the identical language and has been judicially interpreted.

In *Matter of Sundberg v Bragalini* (7 AD2d 15, 19), the court described the proper test for whether a taxpayer is a professional as follows: "whether the application of professional education, training and skill was either essential to produce the income, or so material to its production as reasonably to warrant the conclusion that without them the taxpayer could not have profitably pursued the partic-

ular occupation, under normal conditions of business and competition." There can be no question that the training and skill petitioner acquired as an editor of the *Harvard Crimson* and a staff member of the *Christian Science Monitor* are an essential element of petitioner's success. The fact that he did not attend a specialized school of journalism makes him no less a journalist or journalism any the less a profession. Many prominent lawyers in the history of the profession learned their craft through apprenticeship without ever attending law school. Does this make them any the less professionals?[1]

Perhaps the following dictionary definition of a professional should be applied: "One who has an assured competence in a particular field or occupation." (American Heritage Dictionary [New College ed, 1978].)

To the extent that other factors for consideration in determining whether a particular occupation is a profession within the meaning of the Tax Law have been mentioned including whether a license is required and whether the profession is regulated (see *Matter of Rosenbloom v State Tax Comm.,* 44 AD2d 69, 71 [Cooke, J.]), these requirements might well be unconstitutional if applied in the context of journalism.[2] Moreover, petitioner testified to the existence of the National News Council, which is a self-regulating body within the industry that handles complaints against newsmen.

Sandler and Sullivan, JJ., concur with Fein, J.; Kupferman, J. P., and Alexander, J., dissent in part in an opinion by Kupferman, J. P.

Determination of respondents dated December 24, 1981, which found petitioner liable for commercial rent or occupancy tax is annulled and otherwise the petition is dismissed; determination of respondents dated December 18,

1. "A lawyer without history or literature is a mechanic, a mere working mason; if he possess some knowledge of these, he may venture to call himself an architect." (Sir Walter Scott, Guy Mannering, ch 37 [1815].)

2. In this context, one might well consider the pronouncement by the United States Supreme Court in *Minneapolis Star & Tribune Co. v Minnesota Comr. of Revenue* (460 US __, __): "The main interest asserted by Minnesota in this case is the raising of revenue. Of course that interest is critical to any government. Standing alone, however, it cannot justify the special treatment of the press, for an alternative means of achieving the same interest without raising concerns under the First Amendment is clearly available: the State could raise the revenue by taxing business generally, avoiding the censorial threat implicit in a tax that singles out the press."

1981 with respect to the unincorporated business tax, and the determination of respondents dated December 24, 1981, with respect to the occupancy tax, are confirmed, all without costs and without disbursements.