CITY OF NEW ROCHELLE, Plaintiff, *v.* ANDREW FRIEDMAN, Defendant.

CITY OF NEW ROCHELLE, Plaintiff, *v.* MOHAWK UTILITIES CORP., Defendant.

City Court of New Rochelle, October 9, 1947.

655

*Aaron Simmons, Corporation Counsel (Murray C. Fuerst of counsel), for plaintiff.*

*Charles S. Friedman for defendants.*

RUBIN, J. The defendant Friedman is charged on the complaint of the Building Inspector of the City of New Rochelle with having on October 26, 1946, at 30 Eastchester Road in this City, "wilfully and unlawfully violated Article VII, Sec. 1, of the Zoning Ordinance of the City of New Rochelle, by conducting a business on the premises at the above place, to-wit, by maintaining the business office of a summer camp at said place".

The corporate defendant stands charged by the same complaint with having committed a violation of the same ordinance provision, by permitting the defendant Friedman to so unlawfully conduct himself. The corporate defendant is the landlord of the individual defendant.

Trial was had before the court without a jury. The corporate defendant chose to rest upon the testimony offered by the individual defendant, and the record is clear that the corporate defendant knowingly leased the premises to the defendant Friedman for such activities as he conducted upon its premises in the demised portion thereof; so that if Friedman has violated the law, the corporate defendant is equally guilty.

The defendant, upon the trial, challenged the complainant's testimony by undertaking to demonstrate that he was not conducting a business on the premises, and that if he were found to be conducting a business on the premises he was, nevertheless, immune under the law, on the theory that he was a professional man carrying on the business of a professional man in the premises and that he therefore came within the exceptions in the ordinance which permit certain professions to be carried on in a residential area from which businesses are otherwise excluded. The property involved in this proceeding is such a residential area. In support of his position, the defendant called to the witness stand the distinguished former Superintendent of Schools, Dr. Herbert C. Clish, as an expert witness for the proposition that the activities of the defendant were those of a professional man. Dr. Clish so testified.

The premises in question are in what is known as an R-5 District. Business as such is not permitted therein, except in certain specified and very restricted cases therein specifically enumerated. The provisions of the ordinance defining the permitted uses in R-1 District, all of which would, by the scheme of the ordinance, be likewise permitted in an R-5 District, permit an exception to the dwelling use in the following language (art. III, § 1, subd. [d]): " (d) Professional office or studio of a physician, surgeon, doctor, lawyer, architect, musician, artist, teacher, registered nurse, or other similar professional person residing on the premises and incidental to such residence, including a small professional name plate or sign as the only display or advertising."

So as to meet the question directly, this court finds as a fact that the defendant on the date charged in the information was in fact conducting a business on the premises, namely, the business of supervising and contracting for enrollees of a summer camp. This court also finds as a fact that the activities of the defendant in the demised premises were not incidental to any residence on the part of the defendant therein, and that the defendant's true residence was across the hall from the apartment in question in which the camp activities were carried on. We are left then with the single question as to whether, even if the court were to find that the business was incidental to a residential use, the defendant enjoys the status of a professional man and thereby obtains immunity from prosecution under the ordinance.

Unfortunately, the term profession is not defined in any portion of the ordinance. However, the context of the sentence

creating the exception indicates that to come within its provision one must be of a character and pursuit comparable to " a physician, surgeon, doctor, lawyer, architect, musician, artist, teacher, registered nurse ".

Prosecutions under the ordinance are in the nature of criminal proceedings and carry as punishment therefor possible fines as high as $100 per day for each and every day the violation continues. " Of course, it is axiomatic that in the creation of a penal offense it should be embodied in language descriptive of the act or omission and sufficiently certain to show what was intended to be prohibited and punishable." (*People* v. *Loremady Realty Corp.*, 188 Misc. 944, 946.) The same principle should and does apply to statutes penal in character, as is this one.

Are the terms of this statute sufficiently explicit to inform those who are subject to it as to what conduct on their part will render them liable to any penalty? Can any citizen in the use of his property, whether owned or leased, determine whether he is within or without the law, so that he may determine whether a refusal to obey a mandate of the building inspector would subject him to the substantial penalties of the ordinance? It is fundamental in American law, of course, that a statute which does not fix an ascertainable standard is repugnant to the due process clause in the Federal Constitution, and that the rule of " ascertainable standards " is applicable alike to civil and criminal cases. (*Small Co.* v. *American Sugar Ref. Co.*, 267 U. S. 233, 239.)

" That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." (*Connally* v. *General Constr. Co.*, 269 U. S. 385, 391.)

However, it is equally a basic rule of statutory interpretation that in construing a statute of this character we must apply to its language the meaning and effect generally attributed to words by the common speech of men, and not some esoteric standard held by a more select or cultured group (*Matter of Guerin* [*New Opera Co.-Corsi*], 271 App. Div. 717.)

Using this standard of interpretation, the court feels that regardless of its great respect for the academic and the personal

opinion of as great an educator as Dr. Clish, his appraisal of the defendant and of his activities must yield to the ordinary laymen's conception of what constitutes a professional man and professional activity within the contemplation of the Zoning Ordinance. Our own ordinance has not been construed judicially on this specific subject.

In a long series of cases involving taxation from which professional men would be exempt, the higher courts of this State have held that life insurance agents, insurance brokers, undertakers and embalmers, customhouse brokers, textile brokers, restaurant and food engineers, registered practitioners before the Interstate Commerce Commission, furniture designers, travel consultants and business consultants, do not enjoy the status in the eyes of the law of professional persons. The most recent of these decisions is found in *Matter of De Vries* v. *Graves* (292 N. Y. 529, affg. 266 App. Div. 1030).

Of course, it might be argued that this line of cases is not necessarily a precedent, because the doubt that might have existed in each of them would necessarily be resolved in favor of the taxing power of the State. As fine a test as can be found in the reported cases is derived from the language of the Court of Appeals in *Matter of Geiffert* v. *Mealey* (293 N. Y. 583, 586) where the court ruled: " ' What is a profession? In general, it may be said that a profession includes any occupation or vocation in which a professed knowledge of some department of science or learning is used by its practical application to the affairs of others, either advising, guiding or teaching them, and in serving their interests or welfare in the practice of an art founded on it. The word implies attainments in professional knowledge, as distinguished from mere skill, and the application of such knowledge to uses for others as a vocation.' "

Direct light is finally shed on the subject by a most recent Special Term decision in *Village of East Hampton* v. *Mulford* (188 Misc. 1037) wherein the village sought to permanently enjoin the defendant from conducting a riding academy on his premises which were located in a residential district. The language of the East Hampton ordinance is comparable to our own. The Supreme Court disagreed with the defendant's contention that he was a member of a recognized profession — and its reasoning in that case appeals to this court.

The court, accordingly, is impelled to find, and does find, that the activities of the defendant Friedman, which he, was conducting with the knowledge and consent of the corporate lessor, represents a violation of the ordinance by each of them, and each defendant is accordingly found guilty as charged.

Regardless of the disposition of these particular cases, this court strongly recommends that the ordinance be so further defined that other citizens may not unnecessarily be left in doubt as to the propriety of their activities in the residential areas of the city under the Zoning Ordinance. Clarity of language and specific definitions in these cases will serve a far better purpose than prosecutions.

This matter is adjourned to the court's calendar for October 17, 1947, at which time both defendants are directed to appear and respective counsel will be heard on the question of imposition of sentence.