In the Matter of BONDED CONCRETE, INC., Appellant, v ZONING BOARD OF APPEALS OF THE TOWN OF SAUGERTIES et al., Respondents. [702 NYS2d 184] —Spain, J. Appeal from a judgment of the Supreme Court (Connor, J.), entered April 15, 1999 in Ulster County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Zoning Board of Appeals of the Town of Saugerties denying petitioner's request for a certificate of occupancy.

Petitioner owns a plot of vacant land in the Town of Saugerties, Ulster County, in an industrial zoned district. In June 1998 it applied to the Town's Building Inspector for a certificate of occupancy to place and operate portable concrete batch equipment on this property to produce concrete (*see*, Town of Saugerties Zoning Law § 6.3 [c]). The production of concrete is a permitted use in this industrial district under the Town's Zoning Law (*id.*, at § 4.1 [Schedule of District Use Regulations]). After extensive review, the Building Inspector issued the requested certificate of occupancy, having concluded that site plan approval by the Town Planning Board was not required under section 8.3.1 of the Town's Zoning Law. Respondents Joseph Marino, John Marino and J.M. Stables, Inc. (hereinafter collectively referred to as the Marinos), who

own nearby property, appealed to respondent Town Zoning Board of Appeals (hereinafter the ZBA) challenging, *inter alia,* the issuance of the certificate of occupancy without prior site plan approval. After public hearings and a special session, the ZBA reversed the Building Inspector's decision and rescinded the certificate of occupancy based upon its interpretation that section 8.3.1 of the Town's Zoning Law required petitioner to obtain site plan approval from the Planning Board before a certificate of occupancy could be issued.

Petitioner commenced this CPLR article 78 proceeding seeking to vacate the ZBA's decision and reinstatement of the certificate of occupancy. Supreme Court, after concluding that the Marinos had standing to appeal to the ZBA, dismissed the petition, *inter alia,* upholding the ZBA's interpretation of section 8.3.1 as rationally based. On petitioner's appeal, we reverse.

As a threshold matter, we agree that the Marinos as adjacent landowners were aggrieved and thus, had standing to appeal to the ZBA the Town's issuance of the certificate of occupancy (*see,* Town Law § 267-a [4]; *see also, Matter of Sun-Brite Car Wash v Board of Zoning & Appeals,* 69 NY2d 406, 413; *Matter of Massiello v Town Bd.,* 257 AD2d 962, 963). Notably, the Town's relaxed standing provision permits appeals by any person "allegedly aggrieved" (Town of Saugerties Zoning Law § 7.5.1). The Marinos assert that they own property within 500 feet of the subject parcel and, indeed, received the mandatory notice of the ZBA hearing required by section 7.3.1 of the Town's Zoning Law for such property owners (*see, Matter of Sun-Brite Car Wash v Board of Zoning & Appeals, supra,* at 413-414). Further, the Marinos raised environmental concerns which fall within the zone of interests protected by the Town's Zoning Law (*see, id.,* at 414).

Addressing the merits, while concrete production is a use permitted by right, section 4.1 of the Town's Zoning Law provides in relevant part that—for parcels with this particular permitted use designation* —"site plan approval is required by the Planning Board if the *size of the use* exceeds the *limits* set forth in Section 8.3.1 a, b, or c" (emphasis supplied). The issue raised on this appeal is whether section 8.3.1 required site plan approval for this proposed use. Specifically, section 8.3.1 provides in full as follows:

---

* There are essentially three types of permitted uses under the Town's Zoning Law: (1) uses permitted by right, (2) uses also permitted by right but subject to site plan approval "if the size of the use exceeds the limits set forth in Section 8.3.1. a, b, or c"—the type of permitted use designed for the subject property, and (3) uses permitted upon issuance of a special permit (Town of Saugerties Zoning Law § 4.1).

"8.3.1 *USES REQUIRING SITE PLAN APPROVAL*

"No building permit shall be issued for the following categories of use or building prior to the review and approval of a site development plan by the Planning Board in accord with the provisions of this section:

"a. Any new residential building containing more than four (4) dwelling units;

"b. Any new nonresidential structure or addition thereto *in excess of 2,000 square feet*;

"c. Any structure or use which requires or proposes to provide more than 15 off-street parking spaces;

"d. Any use requiring a special permit.

"Any amendment of the Site Plan for a use listed above must also be approved by the Planning Board. No Certificate of Occupancy shall be issued for any building or use of land within the purview of this section unless the building is constructed or used, or the land is developed or used, in conformity with an approved Site Plan; or an amendment of any such plan" (emphasis supplied).

It is undisputed that petitioner's proposal involves a nonresidential structure of under 2,000 square feet. The determinative, interpretive issue surrounding section 8.3.1 (b) is whether the size qualifier "in excess of 2,000 square feet" applies to both "[a]ny new residential structure" and any "addition thereto" as the Building Inspector concluded, or whether the size modifier applies only to an "addition" to a nonresidential structure as the ZBA inferred. That is, is site plan review triggered only for any new nonresidential structure which exceeds 2,000 square feet, as petitioner urges, or is it required for any new nonresidential structure *regardless of size*, as the ZBA concluded?

Upon review we conclude, as did the ZBA, that section 8.3.1 (b) is susceptible of either of these two different interpretations and thus is ambiguous, requiring interpretation to ascertain and give effect to the legislative intent underlying it (*see, Matter of Ellington Constr. Corp. v Zoning Bd. of Appeals*, 77 NY2d 114, 121; *Pardi v Barone*, 257 AD2d 42, 46; McKinney's Cons Laws of NY, Book 1, Statutes § 92, at 176-182; § 95, at 196-201; § 96, at 202-211; *cf., Matter of Raritan Dev. Corp. v Silva*, 91 NY2d 98, 106-107). We are guided in this analysis by the principle that the ZBA's interpretation of a zoning ordinance is entitled to great deference and will not be disturbed unless it is irrational or unreasonable (*see, Matter of Frishman v Schmidt*, 61 NY2d 823, 825; *Matter of Uciechowski v Ehrlich*,

221 AD2d 866, 868; *Matter of Burke v Denison*, 218 AD2d 894, 895-896). However, we are also guided by the well-established but countervailing precept that zoning restrictions are in derogation of the common law and, as such, must be strictly construed against the municipality which enacted and seeks to enforce them, and that any ambiguity in the language employed must be resolved in favor of the property owner (*see, Matter of Allen v Adami*, 39 NY2d 275, 277; *see also, Matter of DeTroia v Schweitzer*, 87 NY2d 338, 342-343; *Matter of Capital City Rescue Mission v City of Albany Bd. of Zoning Appeals*, 235 AD2d 815, 816; *Matter of Uciechowski v Ehrlich, supra*, at 868; *Matter of Hess Realty Corp. v Planning Commn.*, 198 AD2d 588, 589; McKinney's Cons Laws of NY, Book 1, Statutes § 311, at 473-474).

In our view, the ZBA's interpretation that section 8.3.1 (b) requires site plan approval for any new nonresidential structure *regardless of size* does not withstand scrutiny. Foremost to this conclusion, section 4.1 indicates that for this category of permitted uses site plan approval is required "if the *size* of the use *exceeds* the *limit* set forth in Section 8.3.1 a, b, or c" (emphasis supplied). Section 4.1 clearly indicates that section 8.3.1 site plan approval is triggered by *size* criteria and, indeed, subdivisions (a), (b) and (c) of section 8.3.1 contain some type of threshold size qualifier which must exist to trigger the site plan approval requirement. The ZBA's interpretation of subdivision (b) eliminates the size criterion for new nonresidential structures, thereby rendering the term "size" in section 4.1 superfluous (*see, Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 587; *Matter of OnBank & Trust Co. [Hartnett]*, 90 NY2d 725, 731; McKinney's Cons Laws of NY, Book 1, Statutes § 98 [a], at 220-223). Such a construction is to be avoided (*see, id.*).

Also, when viewed in context, the absence of a comma separating the two parts of subdivision (b) of section 8.3.1 suggests that the size qualifier "in excess of 2,000 square feet" was meant to apply to both "[a]ny new nonresidential structure" as well as to any "addition thereto" (*see, Valleylab, Inc. v New York City Health & Hosps. Corp.*, 228 AD2d 180, 181; McKinney's Cons Laws of NY, Book 1, Statutes §§ 253, 254, at 417-420; *cf., Temple Marble & Tile v Union Carbide Marble Care*, 87 NY2d 574, 581; *Matter of Van Patten v La Porta*, 148 AD2d 858, 860). To test this interpretation we need only look to subdivision (c) of section 8.3.1, which requires site plan approval for "[a]ny structure *or* use which requires or proposes to provide more than 15 off-street parking spaces" (emphasis

supplied). The only rational interpretation of this provision is that the "15 off-street parking spaces" qualifier applies to both "[a]ny structure"—and to any "use"—either of which requires such parking spaces. Indeed, it could not be seriously claimed that the parking spaces qualifier does not apply to "[a]ny structure" making site plan approval required for *all* structures, as this interpretation would render meaningless portions of subdivision (a) and (b) which impose size qualifiers on site plan approval for proposed residential and nonresidential structures or buildings. It would also be contrary to the intent reflected in section 4.1 to provide threshold size qualifiers in section 8.3.1 ([a], [b], [c]) which must exist to trigger site plan approval. Likewise, viewed in context, the size qualifier included in section 8.3.1 (b) refers and applies to all of that subdivision and not merely to the last preceding antecedent (*see*, McKinney's Cons Laws of NY, Book 1, Statutes § 254; *Temple Marble & Tile v Union Carbide Marble Care, supra*, at 580).

Significantly, when the Town Board has intended to subject certain permitted uses to site plan approval *regardless of the size* of the proposed structure, it has done so clearly. For example, when the Town Board amended the Town Zoning Law in 1997 to create a new Office/Light Industrial District providing for various categories of permitted uses, it specified that site plan approval under section 8.3 "shall be required for (1) *all new structures*, (2) additions to existing structures where the addition [meets certain size criteria], (3) any change in the land use category of the principal use, or (4) any change in parking layout or access location" (Town of Saugerties Zoning Law § 4.2.11.4 [emphasis supplied]; *see*, Schedule of District Use Regulations, as amended by Local Laws, 1997, No. 1 of Town of Saugerties). Thus, in contrast to the site plan approval provisions of section 8.3.1 (a), (b) and (c) governing the subject industrial zoned permitted use which include certain size criteria which must exist to trigger site plan approval for new residential and nonresidential buildings or structures (*see, id.*, at § 4.1), the 1997 amendment governing the permitted uses in Office/Light Industrial Districts clearly requires site plan approval for "all new structures" regardless of size. Where, as here, a particular provision in a zoning ordinance is ambiguous and its context convincingly demonstrates that the ambiguity is properly resolved in the landowner's favor, the court will strictly construe it against the municipality, particularly where a contrary interpretation would subject the landowner's property to a lengthy and involved process contemplated by site plan approval (*see*, Town of Saugerties Zoning Law § 8.3;

*Matter of Allen v Adami*, 39 NY2d 275, 277, *supra*; *Matter of Capital City Rescue Mission v City of Albany Bd. of Zoning Appeals*, 235 AD2d 815, 816, *supra*).

Finally, as Supreme Court correctly concluded, the previous decision of Supreme Court (Bradley, J.) vacating—based upon noncompliance with the State Environmental Quality Review Act—site plan approval obtained by petitioner's predecessor in title for a materially distinguishable concrete production proposal for the subject property did not preclude the instant proceeding under principles of res judicata or collateral estoppel (*see, Matter of Morehouse v Town of Horicon Planning Bd.*, 85 AD2d 769; *see also, D'Arata v New York Cent. Mut. Life Ins. Co.*, 76 NY2d 659, 664; *cf., Brooks v Green's Appliances*, 259 AD2d 893; *Matter of Vogel v Board of Educ.*, 259 AD2d 831). Accordingly, we conclude that the ZBA's interpretation resolving the ambiguity in section 8.3.1 (b) of the Town's Zoning Law against petitioner and vacating the certificate of occupancy issued to petitioner was not rational or reasonable and that its determination should be annulled.

Peters, J. P., Carpinello and Graffeo, JJ., concur. Ordered that the judgment is reversed, on the law, without costs, petition granted, determination of respondent Zoning Board of Appeals of the Town of Saugerties annulled and certificate of occupancy issued by the Town of Saugerties to petitioner is reinstated.