■ In the Matter of TOWN OF JOHNSBURG, Appellant-Respondent, v TOWN OF JOHNSBURG ZONING BOARD OF APPEALS, Respondent, and CRANESVILLE BLOCK COMPANY, INC.,

Respondent-Appellant. (Proceeding No. 1.) In the Matter of CRANESVILLE BLOCK COMPANY, INC., Respondent, v TOWN OF JOHNSBURG, Appellant, et al., Respondent. (Proceeding No. 2.) [751 NYS2d 85] —Peters, J. (1) Cross appeals from a judgment of the Supreme Court (Sheridan, J.), entered May 23, 2000 in Warren County, which, inter alia, granted petitioner's application, in proceeding No. 1 pursuant to CPLR article 78, to annul a determination of respondent Town of Johnsburg Zoning Board of Appeals that a batch plant owned by respondent Cranesville Block Company, Inc., could continue to operate as a lawful preexisting nonconforming use, and (2) appeal from an amended judgment of said court (Aulisi, J.), entered March 15, 2002 in Warren County which, inter alia, granted petitioner's application, in proceeding No. 2 pursuant to CPLR article 78, to annul a determination of respondent Town of Johnsburg Zoning Board of Appeals that said batch plant could not continue to operate because the use was interrupted by a period of more than one year.

These proceedings pertain to the use of a parcel of property located in the Town of Johnsburg, Warren County (hereinafter the North Creek facility), that was initially zoned for industrial use. When Torrington Industries began utilizing this property for the operation of a concrete batch plant, it sought confirmation from the Town's Zoning Enforcement Officer, Richard Armstrong, that its use was a permitted use under the local zoning ordinance. By letter dated February 23, 1987, Armstrong advised Torrington that after his consultation with the chairs of both the Town's Planning Board and respondent Town Zoning Board of Appeals (hereinafter ZBA), the proposed use was permitted.

In 1993, the Town's zoning ordinance was amended and the subject property was rezoned from industrial to residential. Assuming that the preexisting nonconforming use of the property was permitted prior to such amendment, article IV, section 5 of the revised zoning ordinance grandfathered and permitted it to continue. However, such zoning ordinance noted that "if such non-conforming use of land, or any portion thereof, ceases for any reason[ ] for any continuous period of more than one year * * * any future use of the land shall be in [c]onformity with the provisions of this ordinance."

On July 3, 1995, Torrington sold the plant to Graystone Materials, Inc., which in turn sold the property to Cranesville Block Company, Inc. (hereinafter CBC). By letter dated April 13, 1998, the current Town Zoning Compliance Officer, Ronald Vanselow, informed CBC that "due to an extended period of

inactivity at your batch plant * * * [the] operation of said plant * * * will not be permitted without first obtaining a variance from the [ZBA]." CBC appealed this determination to the ZBA which, after an extended public hearing, found the plant to be a lawful preexisting, nonconforming use with no period of inactivity "during the relevant period of time from April 13, 1997, to and including April 13, 1998."

Upon a challenge by the Town to the ZBA's determination pursuant to CPLR article 78, Supreme Court found the determinations regarding both the plant's legality and continued operations between the stated period to be both rationally based and supported by substantial evidence (hereinafter proceeding No. 1). However, Supreme Court found that it was not rational for the ZBA to have limited its review of the property's use to the stated period. It therefore annulled its findings concerning a lack of abandonment and remanded the case to the ZBA.

After a second public hearing, the ZBA determined, by decision dated June 11, 2001, that the nonconforming use had ceased and expired, thereby precluding its continued operation of the batch plant due to a period of inactivity for more than one year. CBC then commenced a second CPLR article 78 proceeding (hereinafter proceeding No. 2) and Supreme Court annulled the ZBA's determination of abandonment. The Town now appeals from that portion of Supreme Court's judgment in proceeding No. 1 which found that the plant's preexisting nonconforming use was lawful, as well as from Supreme Court's amended judgment in proceeding No. 2 which overturned the ZBA's determination of abandonment of the preexisting nonconforming use. CBC cross-appeals from that portion of Supreme Court's judgment in proceeding No. 1 that found it irrational to limit the time frame between April 1997 to April 1998, as well as its further determination in that proceeding that the ZBA's finding of continued operations of the plant's preexisting nonconforming use had to be annulled as a result.

Addressing the ZBA's determination in proceeding No. 1 that the preexisting nonconforming use was lawful, we find Supreme Court to have correctly determined the issue. Wholly recognizing the conflicting testimony on this issue, no viable evidence challenged the February 23, 1987 letter from the Zoning Enforcement Officer which clearly advised Torrington that the intended use of the property was permitted under the ordinance. Despite subsequent inquiries independently made by the Zoning Enforcement Officer which led him to communicate to Torrington that a further review of the property's

use might be warranted, the failure to have ever rescinded the letter determination or caused a review of the issue by the ZBA was fatal; Torrington must be found to have been in compliance with the Town's zoning ordinance as existed in 1987. For these reasons, CBC sustained its initial burden of establishing a rational basis for the ZBA's initial determination and thus demonstrated, without viable opposition, that the use was legally created (*see Matter of Squire v Conway*, 256 AD2d 771, 772).

As to the ZBA's constraint of review to the 12 calendar months preceding the notice of violation, it is settled that zoning regulations "must be strictly construed against the municipality which enacted and seeks to enforce them, and that any ambiguity in the language employed must be resolved in favor of the property owner" (*Matter of Bonded Concrete v Zoning Bd. of Appeals of Town of Saugerties*, 268 AD2d 771, 774, *lv denied* 94 NY2d 764; *see Matter of Toys "R" Us v Silva*, 89 NY2d 411, 421-422). Unless the ZBA's interpretation of the zoning ordinance is irrational or unreasonable, its interpretation is entitled to deference (*see Matter of Bonded Concrete v Zoning Bd. of Appeals of Town of Saugerties, supra* at 773). In our review of article IV, section 5, paragraphs A, B, C and D of the Town's current zoning ordinance, we cannot find support for the time limitation imposed. The language of such ordinance fails to define the time period during which the inactivity should be assessed, to wit: "if such non-conforming use of land, or any portion thereof, ceases for any reasons for any continuous period of more than one year, or is changed to a conforming use, any future use of the land shall be in [c]onformity with the provisions of this ordinance." Hence, there appears to be no rational basis upon which we could support the ZBA's limitation of time. To the extent that the limitation was based upon the ZBA's understanding that the parties had agreed to that critical period, the record fails to support that contention.*

Next reviewing proceeding No. 2, wherein Supreme Court determined that the ZBA erred in concluding that there was a cessation of the prior nonconforming use, we iterate the principle that "[a]lthough public policy favors the restriction and eventual elimination of nonconforming uses" (*Matter of Stephentown Concerned Citizens v Herrick*, 246 AD2d 166, 169), where, as here, the statutory language qualifies that a cessation of a nonconforming use for the stated period will consti-

---

* Both the Town and CBC agreed to this window for the purposes of the hearing before the ZBA. However, the Zoning Enforcement Officer, who was sued in his individual capacity, did not.

tute an abandonment, such cessation must be complete (see *Matter of Marzella v Munroe*, 69 NY2d 967, 968; cf. *Matter of Toys "R" Us v Silva*, 89 NY2d 411, 415, supra). Based upon the period of inactivity defined by the ZBA to range between August 12, 1995 and September 25, 1996, the proffer of the March 1, 2001 letter by Mark Aubin, an officer of Graystone Materials, became significant. His peripheral search of the company's business records during its ownership reflect an invoice dated October 19, 1995 for an order of stone, purchased from one of its suppliers, Peckham Materials Corporation, for delivery to the North Creek facility on two separate dates with its charge to be made to such plant. However, an invoice dated October 19, 1995, on the letterhead of Peckham Materials Corporation, simply confirmed such delivery, but invoiced the bill to a different division of Graystone Materials located in the City of Plattsburgh, Clinton County. A telephone bill for the North Creek facility was also presented which shows that no calls were made therefrom after August 5, 1995. There was, however, evidence of a loader rental during the month of August 1995 for such facility for $8\frac{1}{2}$ days at $100 and two full days at $200. Finally, Aubin's letter indicates that as an officer of Graystone Materials, he can confirm that the North Creek facility "was actively operated and maintained through the late fall of 1995" and that "it is highly probable that additional readi-mix concrete sales occurred, both on COD and credit, for which the readi-mix concrete was batched at the North Creek facility during summer/fall 1995."

In the ZBA's view, the aforementioned evidence was insufficient to demonstrate the continued operation of a batch plant for production of cement product for the time period between August 12, 1995 and September 25, 1996. With such cessation of its intended use, its prior grandfathered legal status as a preexisting nonconforming use was extinguished. Yet, Supreme Court, apparently focusing solely on the representations made in the Aubin letter, nonetheless concluded, without an articulated basis, that sufficient evidence existed to refute the claim of abandonment. We find this to be error. Without first concluding that there was a lack of substantial evidence to support the determination rendered by the ZBA, it appears that the court impermissibly substituted its judgment for that of the ZBA (see *Matter of Squire v Conway*, 256 AD2d 771, supra). Accordingly, upon our review of the record evidence, along with relevant judicial precedent, we find substantial evidence to support the ZBA's determination that the preexisting nonconforming use had been abandoned and that the incidental activities noted thereat did not suffice to constitute a continued

operation of a batch plant for the production of cement product during the period in question (*see Matter of New Venture Realty v Fennell*, 210 AD2d 412, 413; *People v Giorgi*, 16 NYS2d 923, 924).

Urging a finding, in the alternative, that the relevant provision of the Town's zoning ordinance is unconstitutional because it is impermissibly vague and indefinite in failing to set the time limitations within which the Town must take action to enforce its provisions, we note that while we would typically convert that portion of this proceeding into a declaratory judgment action (*see Matter of Consolidated Rail Corp. v Tax Appeals Trib. of State of N.Y.*, 231 AD2d 140, 142, *appeal dismissed* 91 NY2d 848), we are precluded from doing so in this instance since jurisdiction was not obtained over all of the relevant parties (*see Matter of Overhill Bldg. Co. v Delany*, 28 NY2d 449, 458). Had we addressed the merits of the constitutional claim, we would note that since " '[d]ue process requires only a reasonable degree of certainty so that individuals of ordinary intelligence are not left to guess at the meaning of a given statutory term' " (*Matter of Burke v Denison*, 218 AD2d 894, 896, quoting *Doe v State of New York*, 189 AD2d 199, 210), CBC, as the challenger of the statute, failed to demonstrate the alleged constitutional infraction in light of the standard of reasonable certainty. Accordingly, we would have found no viable challenge.

Crew III, J.P., Carpinello, Lahtinen and Kane, JJ., concur. Ordered that the judgment entered May 23, 2000 is affirmed, without costs. Ordered that the amended judgment entered March 15, 2002 is reversed, on the law, without costs, and petition dismissed.