OPINION OF THE COURT
Phillip R. Rumsey, J.
Respondent Michael Sweeney is a licensed pest exterminator, who for some time had operated his business from his home in the Town of Homer. When he and his wife, respondent Kelli Sweeney, moved to a new location in the town, he sought a ruling from the Town Code Enforcement Officer (CEO) as to whether his vocational activities would fall within the applicable definition of a “Home Professional Office,” which is a permitted accessory use for the agriculturally-zoned property (Homer Town Code § 109-33 [B]; § 109-6 [A]). The CEO found that Sweeney’s operation did not constitute a home professional office because it involved employees and “vehicles for their use,” and because Sweeney provides no actual service at his home (affirmation of Scott F. Chatfield, Esq., dated Nov. 15, 2004, exhibit 3 [letter of Bruce Weber, CEO, dated Aug. 18, 2004]).
The Sweeneys appealed this determination to the Board, and a public hearing was held, at which petitioners, who own property adjacent to the Sweeneys’, argued that pest extermination does not constitute a “profession” within the meaning of the zoning ordinance. Ultimately, the Board concluded that the CEO had erred in his interpretation, because the ordinance does not contain any explicit limitation with regard to the number of individuals that can work at a “home professional office,” nor does it require that services be provided there. The Board also considered, and rejected, petitioners’ arguments regarding the scope of the term “profession.” Petitioners now challenge the Board’s decision that Sweeney’s business constitutes a “home professional office,” and thus a permitted accessory use for their property.
*609 At the outset, the court is not persuaded by respondents’ contention that petitioners do not have standing to bring this proceeding. To be accorded standing in a zoning matter, petitioners must show that the challenged action “will in fact have a harmful effect on [them] and that the interest asserted is arguably within the zone of interest to be protected by the statute” (Matter of Sun-Brite Car Wash v Board of Zoning & Appeals of Town of N. Hempstead, 69 NY2d 406, 412 [1987], quoting Matter of Dairylea Coop. v Walkley, 38 NY2d 6, 9 [1975]). “[P]reclusive, restrictive standing rules” should not stand in the way of the resolution of zoning disputes on the merits (id. at 413), and generally, it may be presumed that a property owner will be affected by decisions relating to the use of adjoining premises. The mere fact that the propriety of a particular use hinges on an interpretation of the ordinance, rather than the granting of a permit or variance, does not diminish the detrimental effect that an erroneous determination would have on nearby properties.
Here, petitioners assert that they are directly affected by the additional traffic generated by the commercial and employee vehicles of the Sweeneys’ extermination business, which must traverse a right-of-way on their property. The limitations placed on permitted uses of residential or agricultural property, including vocational uses such as professional offices and home occupations, are certainly intended to benefit those in the immediate vicinity by, among other things, minimizing the incidental effects of such pursuits, including noise, traffic, and odors, upon nearby properties. Here, the adverse effects of which petitioners complain differ in kind and degree from those suffered by the community as a whole (because the traffic must actually cross petitioners’ own property), and are within the “zone of interests” intended to be protected by the regulation that they contend was improperly interpreted. This is sufficient to give them standing to contest the Board’s action (id. at 413-414).
The Sweeneys also suggest that because petitioners did not themselves appeal to the Board from the CEO’s finding that an exterminator is a “professional” within the scope of the ordinance, that issue cannot be raised herein. Petitioners were not, however, required to appeal to the Board from the CEO’s determination, which accorded them all the relief they would have sought from the Board in such an appeal (cf., Parochial Bus Sys. v Board of Educ. of City of N.Y., 60 NY2d 539, 545 [1983]). They were nevertheless entitled to raise the issue before *610 the Board, as an alternate ground for a ruling in their favor (id.). Having done so, albeit unsuccessfully, petitioners have sufficiently preserved the issue for review in this proceeding, and exhausted their available administrative remedies (cf., Matter of Klingaman v Miller, 168 AD2d 856, 858 [1990]).
Turning to the merits of petitioners’ challenge to the Board’s interpretation of the code, the court is mindful of the deference that must be accorded a zoning board’s discretionary rulings on such matters (see, e.g., Matter of Bonded Concrete v Zoning Bd. of Appeals of Town of Saugerties, 268 AD2d 771, 773 [2000], lv denied 94 NY2d 764 [2000]; Matter of Burke v Denison, 218 AD2d 894, 895-896 [1995]). That discretion is not unbounded, however, and when a determination is clearly irrational or unsupportable, it must be annulled (see, e.g., Matter of Town of Johnsburg v Town of Johnsburg Zoning Bd. of Appeals, 299 AD2d 796 [2002]). Likewise, the principle that ambiguity in such an ordinance “must be resolved in favor of the property owner” (Bonded Concrete at 774) does not require, nor allow, the acceptance of an “interpretation” that is contrary to the plain meaning of the words used.
The issue in the instant case distills to whether respondent Board could rationally have concluded, given all of the evidence before it, that Sweeney’s use of his home in connection with his activities as a pest exterminator falls within the definition of a “home professional office,” set forth in the Homer Town Code. This, in turn, depends in great measure upon whether pest extermination can reasonably be viewed as a “profession,” similar in relevant respects to the enumerated activities of dentistry, medicine, engineering, law, architecture, teaching, art or music.
It has been noted that the general allowance of “home professional offices” and other types of “home occupations” in residential zones arises from the fact that such uses were “customary practices”: “The doctor, dentist, lawyer, or notary has from time immemorial used his own home for his office,” as has “the dressmaker, milliner, and music teacher” (Matter of Carbonara v Sacca, 45 AD2d 1006, 1006-1007 [1974]). Viewed in this light, it is apparent that one unifying characteristic of all of the “professions” listed in the subject code is the fact that they are all vocations that have customarily been carried on in residential areas. Similar statutes typically include occupations, such as the practice of medicine and law, that are characterized by “professed attainments in special knowledge as distinguished *611 from mere skill” (Matter of Teague v Graves, 261 App Div 652, 655 [1941], quoting United States v Laws, 163 US 258 [1896]), or “knowledge of an advanced type in a given field of science or learning gained by a prolonged course of specialized instruction and study” (Matter of Geiffert v Mealey, 293 NY 583, 586 [1944], quoting People ex rel. Tower v State Tax Commn., 282 NY 407, 412 [1940]), as well as pursuits such as art, music, and teaching, which have been recognized as typically carried on in one’s home (see, People v Kelly, 255 NY 396 [1931]; Matter of Delpriore v Ball, 281 App Div 214, 214 [1953] [ordinance permits use by “doctor, dentist, artist, musician or other person engaged in comparable professional service”]; City of New Rochelle v Friedman, 190 Misc 654, 656 [New Rochelle City Ct 1947] [ordinance allows “(p)rofessional office or studio of a physician, surgeon, doctor, lawyer, architect, musician, artist, teacher, registered nurse, or other similar professional person”]; People v Island Wide Ins. Brokerage, 177 Misc 2d 668, 669 [Nassau Dist Ct 1998] [“physician, lawyer, architect, musician, teacher or professional person”]). One common factor among all of these vocations is their long-standing acceptance in residential neighborhoods.
Accordingly, efforts to fit other occupations, not typically or historically carried on in private homes, into a zoning ordinance’s definition of “professional office” have been uniformly unsuccessful. New York courts have rejected such bids by a management consultant (Matter of Simon v Board of Appeals on Zoning of City of New Rochelle, 208 AD2d 931, 932 [1994]) and an individual operating a summer camp office (City of New Rochelle v Friedman, supra). A similar rationale was cited by the Second Department in reinstating a determination denying a permit to operate a karate school (Matter of Carbonara at 1006-1007). Other jurisdictions have followed suit (see, Reich v City of Reading, 3 Pa Commw 511, 517-520, 284 A2d 315, 319-320 [1971] [insurance broker not a “professional”]; Perron v City of Concord, 102 NH 32, 35, 150 A2d 403, 405-406 [1959] [roofing contractor not a “professional”]).
Indeed, the term “professional office” is ordinarily deemed more restrictive than the more general “home occupation,” which may encompass activities that have historically been carried on within residential premises, but still do not rise to the level of a “profession” (see, e.g., Davidson County v Hoover, 211 Tenn 223, 229-230, 364 SW2d 879, 882 [1963] [cosmetologist not a “profession,” similar to “physician, surgeon, dentist, musi *612 cian, or artist”]). The subject code makes just such a distinction, imposing additional requirements (e.g., a limitation on the number of employees) on those carrying out a “home occupation” (such as dressmaking, hairdressing or home cooking) that does not qualify as a “professional office.”
While the term “professional” has many meanings (see, Chase Scientific Research v NIA Group, 96 NY2d 20, 28 [2001]), in the zoning context it is most often used to distinguish the learned and artistic pursuits from those more commonly viewed as trades or businesses (see, e.g., Reich v City of Reading, 3 Pa Commw at 519-520, 284 A2d at 320; Kelly at 399-400). Consequently, the mere fact that one is required to obtain a license, or is subject to some type of state regulation, as a prerequisite to conducting what would otherwise clearly constitute a business, does not transform such an occupation into a “profession” (see, People v Island Wide Ins. Brokerage at 670 [insurance agent]; Reich v City of Reading, 3 Pa Commw at 519, 284 A2d at 320; Bonasi v Board of Adj. of Haverford Twp., 382 Pa 307, 115 A2d 225 [1955] [cosmetologist]; cf., Chase Scientific Research at 30).
A review of the record herein reveals that the operation being conducted on Sweeney’s property is, without a doubt, a pest extermination business. The record contains no evidence that could support a finding that such operations are (or were, when the Zoning Law was drafted in 1957 [affidavit of Kathleen Hudson, dated Nov. 16, 2004, exhibit B (minutes of board meeting of Sept. 21, 2004)]) typically conducted from residential premises, or that they differ in any relevant respect from other retail or service businesses that are prohibited in residential and agricultural zones (Homer Town Code §§ 109-4, 109-5, 109-6, 109-33; see also § 109-1 [definition of “Home Occupation”]).
Significantly, the code refers to the office of a “dentist, physician, musician, engineer, teacher, lawyer, artist, architect or members of other recognized professions” (Homer Town Code § 109-1 [emphasis added]), and the record is devoid of proof that pest extermination has ever been “recognized” as a profession, by any authority, legal or otherwise. As noted, the fact that exterminators must be licensed or certified by the State, and must obtain certain continuing education to be periodically recertified, cannot, without more, transform them into “profes *613 sionals” of the type intended by the code.* To become an exterminator, one need not complete the kind of rigorous, extended education that is the hallmark of the medical and legal professions. Sweeney’s business does not involve the providing of advice or counsel, beyond that which is provided by any other business or tradesperson (see, Chase Scientific Research at 29; Geiffert at 586), and he is not “bound by a standard of conduct for which discipline might be imposed” (Chase Scientific Research at 30). Nor is Sweeney’s occupation one that would be viewed as involving an artistic endeavor, such that it could be distinguished from the typical business or trade on that basis. An exterminator is, quite simply, engaged in a service business, not a “recognized profession” within the scope of the subject zoning code.
It also bears noting that the code specifically includes, within its definition of “Home Professional Office,” the offices of those engaged in certain specified professions, or other “recognized professions,” “and licensed real estate and insurance agents and brokers” (Homer Town Code § 109-1 [emphasis added]). The use of the conjunction “and” (rather than, for example, “including”) demonstrates the drafters’ understanding that insurance and real estate brokers were not “recognized professionals.” This is in keeping with the majority of court decisions addressing the status of such occupations (see, e.g., People v Island Wide Ins. Brokerage, supra; Reich, supra; see also, 2 Salkin, New York Zoning Law and Practice § 22.13, at 22-12 [4th ed]). If the drafters of the ordinance did not consider real estate and insurance agents and brokers “professionals,” it is inconceivable that they would have intended a different result for pest exterminators. Likewise, given their explicit exclusion of “any retail business, trade or service establishment” from the permitted “home occupations” (Homer Town Code § 109-1), it is unlikely that the drafters of the zoning code intended that such an enterprise would nevertheless be allowed to operate in a residential or agricultural zone, under the rubric of a “professional office.”
In sum, construing the term “other recognized professions” in accordance with the “common understanding” of those words (People v Cully Realty, 109 Misc 2d 169, 170 [1981]), and the ap *614 parent intent of the drafters, as manifested in the words of the code itself, the only rational conclusion that may be reached is that Sweeney’s pest extermination business is not a “Home Professional Office.”
Accordingly, the petition must be, and hereby is, granted, and the determination of the Board is annulled.

 Notably, it appears that it is the nature of the products used, rather than the nature of the work itself or any heightened ethical or fiduciary duty, that has resulted in the regulation of the occupation by the Department of Environmental Conservation.